ALEX RUSKEWICH ET AL. *v.* COMMISSIONER
OF REVENUE SERVICES
(13690)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

---

Argued October 4—decision released November 21, 1989

*Robert L. Klein,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellant (defendant).

*Alex Ruskewich,* pro se, with whom, on the brief, was *Ritva Ruskewich,* pro se, the appellees (plaintiffs).

CALLAHAN, J. This is an appeal by the defendant commissioner of revenue services (commissioner) from the judgment of the Superior Court setting aside an assessment of additional capital gains tax against the plaintiffs Alex and Ritva Ruskewich (taxpayers). The issue presented is whether the taxpayers can carry over and deduct a capital loss to calculate net gain on their Connecticut capital gains and dividends tax return when they reported no carryover loss on their federal income tax return for the same taxable year.[1]

The commissioner disallowed the capital loss carryover, assessed a tax deficiency against the taxpayers,

---

[1] The taxpayers' brief also claims that the commissioner's interpretation of the statute violates the equal protection clause of both the United States and Connecticut constitutions. As the taxpayers conceded at oral argument, however, the constitutional claim was not raised and ruled upon by the trial court and therefore was not an issue properly before this court.

and denied the taxpayers' appeal of the assessment. Thereafter, the taxpayers appealed to the Superior Court, which decided the case on the basis of stipulated facts. That court set aside the commissioner's assessment. The commissioner appealed to the Appellate Court and we transferred the matter to this court, pursuant to Practice Book § 4023. We find no error.

The stipulation reveals the following facts. The taxpayers moved to Connecticut in April, 1981. On their 1981 federal income tax return they reported capital gains totaling $32,799 and capital losses totaling $13,822 for a net gain of $18,977. Since the taxpayers realized the capital gains prior to April, they only reported the $13,822 capital loss on their 1981 Connecticut capital gains and dividends tax return.[2]

In 1983, the taxpayers realized capital gains of $41,746, of which $21,276 was included in their adjusted gross income on their federal income tax return. They did not report any capital loss carryover from prior years. In contrast, on their Connecticut tax return, they reduced the $21,276 net taxable gain by $13,644, the unused capital loss carryover from 1981. The taxpayers reported a net gain of $7632 on their Connecticut tax return.[3]

---

[2] The commissioner does not, nor can he, dispute the propriety of the taxpayers' treatment of the capital gains on their 1981 Connecticut tax return. General Statutes § 12-505 defines taxable year as, "the same accounting period as the taxpayer's taxable year for federal income tax purposes or that portion of such year as either commences when the taxpayer becomes a resident or ends when the taxpayer ceases to be a resident of this state . . . . " Accordingly, the taxpayers were not required to report the capital gains realized prior to their relocation to Connecticut in their Connecticut tax return in 1981. For federal tax purposes, however, the capital losses were netted against the capital gains.

[3] At oral argument, the question was posed from the bench whether, under federal tax law, the taxpayers properly calculated the amount of capital gain that should be included in their adjusted gross income. It appears that the taxpayers deducted the capital loss carryover from the net gain *after* the computation of the net capital gains deduction, allowed pursuant to

The commissioner disallowed the capital loss carryover claiming that General Statutes (Rev. to 1983) §§ 12-505[4]

26 U.S.C. (Rev. to 1982) § 1202. Instead, the taxpayers should have subtracted the capital loss from capital gains before the § 1202 deduction as required by federal tax law. See 26 U.S.C. (Rev. to 1982) §§ 1202 (a), 1212 (b) (1) and 1222.

[4] "[General Statutes (Rev. to 1983)] Sec. 12-505. DEFINITIONS. When used in this chapter, unless the context otherwise requires: 'Taxpayer' means a husband and wife both of whom are residents in this state and who file for the taxable year a single federal income tax return jointly, and each and every other individual resident in this state, who have or has earnings received, credited or accrued in any taxable year from gains from the sale or exchange of capital assets, or from dividends subject to tax under this chapter; 'taxable year' means the same accounting period as the taxpayer's taxable year for federal income tax purposes or that portion of such year as either commences when the taxpayer becomes a resident or ends when the taxpayer ceases to be a resident of this state; 'dividends' means those dividends taxable for federal income tax purposes without regard to the dividend exclusion; 'commissioner of revenue services' or 'commissioner' means the commissioner of revenue services: 'gains from the sale or exchange of capital assets' means (A) net gain as determined for federal income tax purposes, after due allowance for losses and holding periods, (1) from sales or exchanges of capital assets or assets treated as capital assets, other than notes, bonds or other obligations of the state of Connecticut or any of the political subdivisions thereof, or its or their respective agencies or instrumentalities, or (2) from transactions or events taxable to the taxpayer as such sales or exchanges, and being the net amount includable in the taxpayer's adjusted gross income, with respect to all such sales, exchanges, transactions, or events, under the provisions of the Internal Revenue Code in effect for the taxable year and (B) net gains from sales or exchanges of certain depreciable property, not includable in the taxpayer's adjusted gross income as net capital gains subject to the deduction allowed under Section 1202 of the Internal Revenue Code, but includable in such adjusted gross income as supplemental gains determined in accordance with Internal Revenue Service Form 4797; 'resident' means an individual: (1) Who is domiciled in this state; provided, if the individual maintains no permanent place of abode in this state, maintains a permanent place of abode elsewhere, and spends in the aggregate not more than thirty days of the taxable year in this state, he shall be deemed not a resident; or (2) who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three days of the taxable year, unless he, not being domiciled in this state, is in the armed forces of the United States; 'person' means the taxpayer or any pledgee, assignee, receiver, referee, trustee, conservator, guardian, custodian or other fiduciary of the taxpayer acting for the taxpayer; 'adjusted gross income' means adjusted gross income for federal income tax purposes."

and 12-506[5] only allow a loss carryover for Connecticut purposes when it is used in the computation of net gain on the taxpayers' federal income tax return. The taxpayers disagree with the commissioner's assessment and argue that General Statutes (Rev. to 1983) § 12-505 incorporates federal tax law and requires the taxpayers to utilize the federal tax system for calculating capital gain. Accordingly, they argue, the taxpayers could offset the capital loss carryover against capital gains in 1983 in accordance with federal law.

Our well established principles of statutory construction are designed to further our fundamental objective of ascertaining and giving effect to the apparent intent

---

[5] "[General Statutes (Rev. to 1983)] Sec. 12-506. IMPOSITION OF TAX ON DIVIDENDS AND CAPITAL GAINS. (a) A tax is hereby imposed on (1) all dividends earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year except that no such tax shall be imposed unless the taxpayer's adjusted gross income in such year equals or exceeds twenty thousand dollars, in accordance with the following schedule:

| Adjusted Gross Income In Taxable Year | Rate of Tax On All Dividends |
| --- | --- |
| At least $20,000 but less than $22,000 | 1% |
| At least $22,000 but less than $24,000 | 2% |
| At least $24,000 but less than $28,000 | 3% |
| At least $28,000 but less than $30,000 | 4% |
| At least $30,000 but less than $35,000 | 6% |
| At least $35,000 but less than $40,000 | 7% |
| At least $40,000 but less than $50,000 | 7.5% |
| At least $50,000 but less than $100,000 | 8% |
| $100,000 and over | 9% |

and (2) at the rate of seven per cent on all net gains from the sale or exchange of capital assets which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year subject to the exemptions allowed in section 12-506c, and section 12-506f, when applicable."

of the legislature. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment [and] to the legislative policy it was designed to implement . . . ." *Id.*; *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 128, 527 A.2d 672 (1987); *Kellems* v. *Brown,* 163 Conn. 478, 502–503, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973).

This court pays considerable deference to the commissioner's interpretation of tax statutes and regulations. *Clinton Nurseries, Inc.* v. *Commissioner of Revenue Services,* 205 Conn. 761, 765, 535 A.2d 361 (1988). Where, however, the issue has not previously been the subject of judicial scrutiny, has not been the subject of a legislatively approved regulation and is not a time-tested interpretation of the statute, the commissioner's interpretation of the statute is not entitled to special deference. *Dine Out Tonight Club, Inc.* v. *Department of Revenue Services,* 210 Conn. 567, 570 n.3, 556 A.2d 580 (1989). While statutes that provide an exemption or deduction from taxation must be strictly construed in favor of the taxing authority; *Clinton Nurseries, Inc.* v. *Commissioner of Revenue Services,* supra, 764; *Skaarup Shipping Corporation* v. *Commissioner,* 199 Conn. 346, 352, 507 A.2d 988 (1986); "[i]t is also true . . . that such strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used." *Jewett City Savings Bank* v. *Board of Equalization,* 116 Conn. 172, 185, 164 A. 643 (1933); *Phelps Dodge Copper Products Co.* v. *Groppo,* supra, 129; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561 (1971).

General Statutes (Rev. to 1983) § 12-506 (a) (2) imposes a capital gains tax upon "all net gains from the sale or exchange of capital assets." General Stat-

utes (Rev. to 1983) § 12-505 (A) defines "gains from the sale or exchange of capital assets" as the "net gain as determined for federal income tax purposes, after due allowance for losses and holding periods . . . (2) from transactions or events taxable to the taxpayer as such sales or exchanges, and being the net amount includable in the taxpayer's adjusted gross income, with respect to all such sales, exchanges, transactions, or events, under the provisions of the Internal Revenue Code in effect for the taxable year." Section 12-505 provides further that, " 'adjusted gross income' means adjusted gross income for federal income tax purposes."

The commissioner's argument focuses upon the language that defines "net gain" as being the "net amount includable in the taxpayer's adjusted gross income . . . under the provisions of the Internal Revenue Code in effect for the taxable year." General Statutes (Rev. to 1983) § 12-505 (A) (2). The commissioner urges us to construe "net gain" to mean the net amount included in the taxpayers' adjusted gross income on their federal income tax return for that particular year. Accordingly, the commissioner argues, since the taxpayers did not deduct a capital loss carryover against capital gains to arrive at their adjusted gross income for federal purposes for 1983, they could not deduct a capital loss carryover for state purposes.[6] In other words, the "net gain" for state tax purposes must be exactly the same number as "net gain" for federal tax purposes. We disagree.

In seeking to discern the intent of the legislature, we look to the words of the statute as a whole to offer guidance. General Statutes (Rev. to 1983) § 12-505 (A)

---

[6] For federal tax purposes, the taxpayers took advantage of the capital loss and offset it against capital gains on their 1981 tax return. Therefore, for federal purposes, a capital loss carryover was not available to the taxpayers in 1983.

states that taxable net gains are those defined for federal income tax purposes "after due allowance for losses and holding periods." The legislature clearly intended that losses be accounted for when "net gain" is computed. The only guidance the legislature gives on *how* to account for losses is through its reference to federal tax law.

"This court has consistently held that when our tax statutes refer to the federal tax code, 'federal tax concepts are incorporated into state law.' *The B.F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 7, 490 A.2d 991 (1985); *Yaeger* v. *Dubno,* 188 Conn. 206, 210, 211–12, 449 A.2d 144 (1982); *Woodruff* v. *Tax Commissioner,* 185 Conn. 186, 191, 440 A.2d 854 (1981); *Peterson* v. *Sullivan,* 163 Conn. 520, 525, 313 A.2d 49 (1972); *Kellems* v. *Brown,* [supra, 518–19]; *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 489–93, 115 A.2d 455 (1955), appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1956); *McKesson & Robbins, Inc.* v. *Walsh,* 130 Conn. 460, 461–64, 35 A.2d 865 (1944)." *Harper* v. *Tax Commissioner,* 199 Conn. 133, 139, 506 A.2d 93 (1986); *Skaarup Shipping Corporation* v. *Commissioner,* supra, 351. General Statutes (Rev. to 1983) § 12-505 makes repeated references to the federal tax code. Specifically, the statute refers to "net gain as determined for *federal income tax purposes* . . . and being the net amount includable in the taxpayer's adjusted gross income . . . under the *provisions of the Internal Revenue Code* in effect for the taxable year." (Emphasis added.) General Statutes (Rev. to 1983) § 12-505 (A) (2). Both the language of the statute and long-standing precedents of this court support the conclusion that § 12-505 incorporates the federal tax system of taxing capital gain income. *Harper* v. *Tax Commissioner,* supra, 139; *Peterson* v. *Sullivan,* supra, 525; *Kellems* v. *Brown,* supra, 515. The

statute explicitly refers to the provisions of the Internal Revenue Code and not simply to an amount calculated on the federal tax return.

There is no dispute that, under the federal tax code, capital losses can be carried over to succeeding tax years to offset capital gains. See 26 U.S.C. §§ 1212 (b) (1) and 1222. Since § 12-505 makes no express provision for the treatment of capital losses except by way of reference to federal law, the legislature evidently intended to incorporate the federal method of treating capital loss carryovers.

Our conclusion is based upon our holding in *Kellems* v. *Brown,* that is, that the intent of the legislature in enacting § 12-505 was to incorporate federal tax law. In *Kellems* v. *Brown,* supra, this court construed the term "net gain" in order to determine whether § 12-505 allowed a deduction for long term capital gains equivalent to that allowed under 26 U.S.C. § 1202 of the federal tax code. Despite the fact that § 12-505 did not make a specific reference to the § 1202 deduction, this court construed the statute to incorporate the deduction. Id., 510–17. We emphasized that (1) the statute makes repeated references to federal income tax law, and (2) § 12-505 defines net gains as they are defined for federal income tax purposes "after due allowance for losses and holding periods." Id., 512. The reference to "holding periods" indicated that the legislature intended to afford different treatment for long term as opposed to short term capital gains. This distinction would only make sense if the long term capital gains preference was allowed.[7]

---

[7] At oral argument, the commissioner claimed that the legislature amended General Statutes § 12-505 subsequent to the *Kellems* v. *Brown,* 163 Conn. 478, 313 A.2d 53 (1972) decision to clear up the ambiguous wording of the statute. Yet when the commissioner filed a motion with the trial court to open the judgment for reargument and or articulation, he stated: "There has been no change in the pertinent language in the present stat-

The commissioner maintains that § 12-506 allows a deduction only for losses incurred in the current taxable year. General Statutes (Rev. to 1983) § 12-506 (a) provides in pertinent part: "A tax is hereby imposed on . . . all net gains from the sale or exchange of capital assets which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year . . . . " The commissioner argues that "taxable year" means the current tax year and therefore, by definition, cannot incorporate a tax loss carryover. The difficulty with this reasoning, however, is that General Statutes (Rev. to 1983) §§ 12-505 and 12-506 do provide for capital loss carryovers.[8] In fact, the commissioner concedes as much. According to the commissioner's interpretation of the statute, the only time a taxpayer would not be allowed to carry over a loss would be in a situation such as the current case where the taxable year for Connecticut tax purposes is shorter than the taxable year for federal income tax purposes. We are unpersuaded that this is the proper reading of the statute. We conclude that §§ 12-505 and 12-506 allow the taxpayer to apply federal tax principles, regardless of the length of the taxable year.

Our conclusion is consistent with the general purpose of loss carryover deductions. "Such deductions counteract the inequity that may result from breaking up taxable activity into relatively short periods of time and taxing a discrete income producing period without regard to a preceding period of loss." *The B.F. Goodrich Co.* v. *Dubno,* supra, 9. In summary, § 12-505 allows the taxpayers to deduct their capital loss car-

ute from that in the 1971 statute that the court interpreted in *Kellems*." We agree that the changes made in the statute subsequent to the *Kellems* decision did not alter our holding that § 12-505 incorporates the federal tax *system* of taxation.

[8] In 1971, the legislature specifically deleted from General Statutes § 12-505 a provision which disallowed any reduction for loss carryovers or loss carrybacks. Public Acts, Spec. Sess., June, 1971, No. 8, § 9.

ryover on their 1983 return even though the capital loss occurred in 1981 because they would otherwise be deprived of a benefit that the statute affords them simply because their taxable year for Connecticut tax purposes in 1981 was shorter than the calendar year.

There is no error.

In this opinion the other justices concurred.