UNITED STATES FIDELITY AND GUARANTY COMPANY
*v.* LORENZO PITRUZZELLO ET AL.

LORENZO PITRUZZELLO *v.* UNITED STATES FIDELITY
AND GUARANTY COMPANY ET AL.

TROY KREDER ET AL. *v.* UNITED STATES FIDELITY
AND GUARANTY COMPANY ET AL.
(12821)

FOTI, LANDAU and SCHALLER, Js.

Argued May 5—decision released August 23, 1994

*Steven L. Seligman,* with whom, on the brief, was *Lester Katz,* for the appellant (plaintiff in the first case, named defendant in the second and third cases).

*Jeffrey L. Polinsky,* with whom was *John R. Serrano,* for the appellees (defendants in the first case, plaintiffs in the second and third cases).

SCHALLER, J. The plaintiff in the first case, United States Fidelity and Guaranty Company, appeals from the judgment of the trial court denying its application to vacate an arbitration award made to the defendants,[1] and from the judgments granting the defendants' applications to confirm the award. The sole issue on appeal is whether, under the defendants' underinsured motorist coverage, the plaintiff is entitled to credits for payments made to other claimants by or on behalf of the tortfeasor in calculating the offset against damages

---

[1] United States Fidelity and Guaranty Company is the plaintiff in the first case and a defendant in the second and third cases. We refer to it as the plaintiff in this opinion. Lorenzo Pitruzzello is a defendant in the first case and the plaintiff in the second case. Troy Kreder and Louis Catalano are defendants in the first case and the plaintiffs in the third case. We refer in this opinion to Pitruzzello, Kreder and Catalano as the defendants.

owed to each of the defendants. We affirm the judgments of the trial court.

The following facts are relevant to this appeal. The defendants, Lorenzo Pitruzzello, Troy Kreder and Louis Catalano, were injured in a motor vehicle accident on December 22, 1990, while occupying Kreder's car. The tortfeasor, Esther E. McAvay, was insured under a policy with a limit of $20,000 per person and $40,000 per accident. Pursuant to that policy, Pitruzzello received $18,000, Kreder and Catalano each received $9000, and a fourth occupant not involved in this appeal received $4000.

The defendants pursued arbitration as required by subsection (c) of General Statutes § 38a-336 (formerly § 38-175c) to secure underinsured motorist benefits from the plaintiff under a $50,000 single limit policy owned by Kreder. At the arbitration proceeding, the parties relied on the same arguments offered here regarding the meaning of the $50,000 limit. Two of the three arbitrators agreed with the defendants' position, and awarded Pitruzzello $32,000, Kreder $5000, and Catalano $4200. The trial court denied the plaintiff's subsequent application to vacate or modify the award[2] and granted the defendants' applications to confirm the award.[3] The plaintiff appeals from that judgment.

---

[2] The plaintiff applied to vacate the award pursuant to General Statutes § 52-418 (a), which provides in part that "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." The alternative application to modify or correct the award was made pursuant to General Statutes § 52-419 (a), which provides in part that "[u]pon the application . . . the superior court . . . shall make an order modifying or correcting the award . . . (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award . . . ."

[3] General Statutes § 52-417 allows the filing of an application to confirm an arbitration award.

Currently, under the tortfeasor's motor vehicle insurance policy and Kreder's underinsured motorist policy, Pitruzzello has been awarded a total of $50,000, Kreder, a total of $14,000, Catalano, a total of $13,200, and the nonparty occupant of the Kreder vehicle, $4000. A total of $81,200, therefore, has been awarded to the defendants. The plaintiff contends, however, that the defendants should be compensated no more than they would have been had they been injured by a motorist carrying a $50,000 single limit liability policy. That analysis would limit the defendants to collecting no more than $10,000 from the plaintiff under the underinsured motorist provision, the difference between the underinsured policy limit and the amount recovered from the tortfeasor. The plaintiff argues that the defendants have been overcompensated by $31,200.

The underinsured motorist provision of the motor vehicle policy issued by the plaintiff states in part: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible . . . ."[4] Language identical to this was interpreted by our Supreme Court to prohibit an insurer from reducing the damages owed to a claimant under a underinsured motorist policy by taking credits for payments made to other claimants in *Stephan* v. *Pennsylvania General Ins. Co.,* 224 Conn. 758, 764, 621 A.2d 258 (1993). The *Stephan* court held that "[t]o interpret 'the bodily injury' to mean 'a bodily injury' or 'any bodily injuries' would be to distort the plain and unambiguous meaning of this simple phrase. . . . We conclude that the policies did not permit Phoenix and

[4] We note that a copy of the automobile insurance policy at issue in this case was not made available to this court. We rely on the fact that the parties agree that the relevant language of the underinsured motorist provision is as quoted in the text of this opinion.

Pennsylvania to reduce the damages owed to Stephan by taking credit for payments made to others." (Citation omitted.) Id., 764–65. A companion case, *Buell* v. *American Universal Ins. Co.,* 224 Conn. 766, 770–71, 621 A.2d 262 (1993), interpreted similar language in another underinsured motorist policy no differently.

The plaintiff attempts to distinguish *Stephan* from the present case on the ground that the court in *Stephan* did not state or imply that the total award could exceed the underinsured motorist limits of the policy issued by the defendant. In that case, the amount of underinsured motorist insurance coverage available to Stephan totaled $800,000 between two policies, the greater of which was for $600,000. *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 224 Conn. 761. Stephan was found to be entitled to $450,000 damages, reduced by $128,500 in payments already received. Id., 766. The court held that $71,500 in payments made to other injured passengers could not be credited against Stephan. Id., 764–65. The case was remanded with direction to award the claimant $321,500 plus interest, if any. Id., 766.

The plaintiff advances this distinction because of our Supreme Court's holding in *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 569 A.2d 1105 (1990). There, the court held that under the former General Statutes (Rev. to 1989) § 38-175c (b) (2), now § 38a-336 (d), underinsurance coverage is activated only if it is greater than the aggregate of the liability limits of the tortfeasor's vehicle.[5] Id., 631. The court adopted the analysis of courts in other states, which have construed

---

[5] General Statutes § 38a-336 (d) provides that "an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

similar statutes as being intended " 'to permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party.' *Connolly* v. *Royal Globe Ins. Co.,* 455 A.2d 932 (Me. 1983). 'It could not have been intended to place the insured who is injured by an underinsured motorist in a better position than one who is harmed by a motorist having the same insurance as the insured.' *Dewberry* v. *Auto-Owner Ins. Co.,* 363 So. 2d 1077, 1081 (Fla. 1978)." *American Motorists Ins. Co.* v. *Gould,* supra, 631; see also *Mass* v. *United States Fidelity & Guaranty Co.,* 222 Conn. 631, 647, 610 A.2d 1185 (1992).

The plaintiff correctly asserts that the individuals injured in the accident in question here, collectively, have been awarded more than they would have been able to recover had the tortfeasor McAvay been insured for $50,000 and no underinsured motorist policy been available to the defendants. The plaintiff claims that in light of the language in *Gould* surrounding the policy behind General Statutes § 38a-336 (d), the defendants should not be allowed in effect to stack the liability policy of McAvay with the underinsured motorist policy of the defendant Kreder, thus collecting $31,200 more than they otherwise would be able to recover. The defendants argue in response that *Gould* is inapposite because the issue in that case was the *triggering* of underinsured motorist coverage, not the determination of the amount of the offset. See *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 36–37, 594 A.2d 977 (1991) (interpolicy stacking permissible in context of determining amount of award to be paid to claimant, but not in initial determination of whether tortfeasor's vehicle is underinsured pursuant to § 38a-336); see also *Allstate Ins. Co.* v. *Link,* 35 Conn. App. 338, 346–47, 645 A.2d 1052 (1994). Although we could rely on this distinction, the identity of the language of the defendants' underin-

sured motorist policy in this case with that of the policy in *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 224 Conn. 758, controls our decision in this case.

It is clear that an insurer may draft an underinsured motorist provision that allows an award of underinsured motorist benefits to be reduced by amounts paid by or on behalf of a tortfeasor to all injured parties both for personal injury and property damages. *Allstate Ins. Co.* v. *Lenda,* 34 Conn. App. 444, 453, 642 A.2d 22 (1994). Those cases that have not allowed similar reductions, such as *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 224 Conn. 758, and *Buell* v. *American Universal Ins. Co.,* supra, 224 Conn. 766, have been based on the specific language of the underinsured motorist provisions in the policies at issue rather than on a legislative mandate forbidding such reductions. Indeed, this court decided in *Allstate Ins. Co.* v. *Lenda,* supra, 453, that § 38a-334-6 of the Regulations of Connecticut State Agencies authorizes policy provisions providing for reductions for amounts paid by a tortfeasor to others. *Allstate Ins. Co.* v. *Lenda,* supra, 454–55. The policy at issue in this case, however, contains language identical to that in *Stephan* and *Buell*—language that has been interpreted by our Supreme Court to disallow such reductions. There is no evidence of any intent to the contrary by the parties. Thus, according to the specific terms of the defendant Kreder's policy, the defendants individually will suffer reductions only for amounts paid to them on account of their own bodily injuries.

The specific terms of the underinsured motorist provision of the policy are not vitiated by the relevant language in *American Motorists Ins. Co.* v. *Gould,* supra, 213 Conn. 631, and its progeny, regarding the policy behind General Statutes § 38a-336. The legislative intent behind the underinsured motorist statute has been defined repeatedly as "to assure that every insured recovers damages he or she would have been able to recover if the uninsured [or underinsured]

motorist had maintained a policy of liability insurance." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 1.3; see also *Smith* v. *Safeco Ins. Co. of America,* 225 Conn. 566, 573, 624 A.2d 892 (1993); *Bodner* v. *United Services Automobile Assn.,* 222 Conn. 480, 499, 610 A.2d 1212 (1992). There is no public policy, however, *against* allowing an injured party to recover more than he would have had the tortfeasor maintained a policy of liability insurance equal in amount to the underinsured motorist coverage of the claimant, as long as the injured party does not recover more than is necessary to make him whole. *Buell* v. *American Universal Ins. Co.,* supra, 224 Conn. 775; *Rydingsword* v. *Liberty Mutual Ins. Co.,* 224 Conn. 8, 18–19, 615 A.2d 1032 (1992). In this case, the defendants are not attempting a double recovery; they are merely attempting to be compensated for their actual damages as found by the arbitration panel pursuant to an underinsured motorist provision identical to that in *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 224 Conn. 758. They are entitled to the benefits expressly provided by the insurance contract.

We do not conclude, therefore, that underinsured motorist coverage always allows each claimant to recover individual damages up to the limit of the underinsured motorist policy regardless of whether the total payments to all claimants exceed the value of the policy. We hold only that, in this case, the specific terms of the underinsured motorist provision at issue do not entitle the plaintiff to credits for payments made to other claimants in calculating the offset of damages owed to each of the defendants and, therefore, that the collective claimants may recover an amount in excess of the underinsured motorist coverage.

The judgments are affirmed.

In this opinion the other judges concurred.