[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 11, 1995
This is a contract case. Procedurally, it comes before the court by way of an application made by Scott Ohmes, Robert Ohmes and Evelyn Ohmes (the plaintiffs) to vacate, correct or modify arbitration awards and by a motion to confirm those awards made by the defendant Government Employees Insurance Company (GEICO).
The facts are not disputed. On May 13, 1991, four members of the Ohmes family were travelling in Maryland when, due to a blowout of one of their vehicle's tires, they pulled off the highway to replace the tire. While changing the tire, Lawrence Ohmes and Scott Ohmes were struck and injured by an automobile operated by Robin Spittle. Lawrence Ohmes eventually died from his injuries. Scott Ohmes suffered a coma and sustained very serious injuries requiring major reconstructive surgery to both legs. Robert and Evelyn Ohmes, although not struck by the Spittle vehicle, made a claim for emotional distress pursuant to Maryland law. CT Page 951
Spittle was an insured under two liability insurance policies which together provided coverage totalling $340,000. The estate of Lawrence Ohmes, Scott Ohmes, and Robert and Evelyn Ohmes sought compensation from Spittle for their respective injuries and losses. In settlement of those tort claims Spittle's insurer paid $318,000 to the estate of Lawrence Ohmes, $21,000 to Scott Ohmes, and $1,000 to Robert and Evelyn Ohmes collectively.
The plaintiffs and the estate of Lawrence Ohmes are insureds under the GEICO insurance policy. Only the plaintiffs, however, sought underinsured motorist benefits. The estate of Lawrence Ohmes did not make a claim for underinsured motorist benefits. The total amount of underinsured motorist coverage afforded under the GEICO policy is $900,000. The plaintiffs demanded $878,000 from GEICO, a demand equal to the $900,000 of underinsurance coverage less the $22,000 they had received from Spittle's insurers. GEICO paid the plaintiffs $560,000, the difference between the $900,000 policy limit and the $340,000 paid to the estate of Lawrence Ohmes plus the amount paid to the plaintiffs. The plaintiffs conceded that the $22,000 which they collectively received from Spittle's insurer should be deducted from the GEICO's $900,000 underinsured motorist coverage limit. They disputed, however, that this limit could be further reduced by the $318,000 paid to the estate of Lawrence Ohmes, which was not making a claim for underinsured motorist benefits.
As required by subsection c of General Statutes § 38a-336 and the terms of the insurance policy, the plaintiffs and GEICO proceeded to arbitration over the disputed $318,000.[1] By agreement of the parties, the arbitration was bifurcated between coverage and damages. In the arbitration, GEICO raised three defenses to the plaintiffs' claims. First GEICO claimed that the plaintiffs were not entitled to any underinsured motorist benefits because they had failed to obtain GEICO's consent before settling their claims against Spittle's insurer, as required by GEICO's insurance policy. Second, GEICO claimed that General Statutes § 38a-336(b) barred the plaintiffs from any further CT Page 952 recovery of underinsured motorist benefits. Finally, GEICO claimed that under the terms of its insurance policy it was entitled to a credit against the plaintiffs' claims for the liability payment made to the estate of Lawrence Ohmes by Spittle's insurer.
All three arbitrators found for the plaintiffs on the first point raised by GEICO, finding that GEICO had consented to the settlement of the underlying tort claims. That finding is unassailed here. Two of the three arbitrators found for GEICO on the second issue, holding that General Statutes § 38a-336(b) barred the plaintiffs from any further recovery against GEICO. In their June 27, 1994 memorandum of decision, those same two arbitrators held that because of their decision on the second issue, it was unnecessary to address the third issue, which was whether GEICO was entitled to a credit under the terms of its policy for the payment made to the estate of Lawrence Ohmes by Spittle's insurer. In a separate opinion also dated June 27, 1994, the third arbitrator dissented from the majority's decision with respect to the interpretation of General Statutes § 38a-336(b) and further opined that GEICO was not entitled to a credit under the terms of the insurance policy for the payment made to the estate of Lawrence Ohmes. On July 14, 1994, the other arbitrator who had joined in the majority decision submitted a separate opinion stating that while the issue of whether GEICO was entitled to a credit under the provisions of its policy was moot, he concurred in the reasoning of the dissenting arbitrator that GEICO was not entitled to a credit for the payment made to the estate of Lawrence Ohmes.
The plaintiffs thereupon made an application to modify, correct or vacate the arbitration award (#316002). See General Statutes §§ 52-418, 52-419.[2]
GEICO made an application for an order confirming the award. See General Statutes § 52-417.[3]
 I.
The uninsured and underinsured motorist coverage provisions of the GEICO policy provide in pertinent part: "If we and an insured do not agree that he is legally entitled to recover damages or as to the amount CT Page 953 payable under this coverage, either party may request that the dispute be arbitrated . . . The written decision of the arbitrator will be binding on the insured and us." (Italics omitted.) General Statutes § 38a-336(c) provides in relevant part: "Each automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination on insurance coverage in such arbitration proceeding." In American Universal Ins. Co. v.DelGreco, 205 Conn. 178, 191, 621 A.2d 262 (1987), the court held that "where judicial review of compulsory arbitration proceedings required by § 38-175c(a)(1) [now § 38a-336(c)] is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." Section38a-336(c) of the General Statutes "makes arbitration of insurance coverage issues compulsory." (Emphasis in original.) Bodner v. United Services AutomobileAssn., 222 Conn. 480, 488, 610 A.2d 1212 (1992). "[A] coverage issue is one that . . . involves the interpretation of both statutory and policy language . . . or otherwise implicates the scope of coverage afforded by the terms of the policy." (Citations omitted.) Wynn v.Metropolitan Property Casualty Ins. Co.,30 Conn. App. 803, 806, 635 A.2d 814 (1993), affirmed.228 Conn. 436, 635 A.2d 814 (1993). Whether General Statutes § 38a-336(b) or the terms of a particular insurance policy limit the amount recoverable as underinsured motorist benefits is an issue of coverage which, on an application to vacate, correct or modify pursuant to General Statutes §§ 52-418, 52-419, the court must review de novo. Buell v. American UniversalIns. Co., 224 Conn. 766, 770-71, 621 A.2d 262 (1993);Stephan v. American Universal Ins. Co., 224 Conn. 758,763-65, 621 A.2d 258 (1993).
 II.
General Statutes § 38a-336(b) provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment CT Page 954 of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." This provision was one of the two sentences which were added to the uninsured motorist statute in 1979 to provide for underinsured motorist coverage. See Public Act No. 79-235.
The plaintiffs assert that the issue here is "controlled" by Stephan v. Pennsylvania General Ins. Co.,supra, 224 Conn. 758, Buell v. American Universal Ins.Co., supra, 224 Conn. 766, and United States Fidelity Guaranty Co. v. Pitruzzello, 35 Conn. App. 638,646 A.2d 936, cert. denied, 231 Conn. 933, 649 A.2d 255
(1994), which, claim the plaintiffs, hold that an insurer is not entitled to a credit from its underinsured motorist coverage limits for amounts paid by another liability carrier to an individual not asserting a claim for underinsured motorist benefits, where the insurance policy providing for such benefits does not so provide. Moreover, say the plaintiffs, this is the law even where it results in the persons asserting claims for underinsured motorist benefits receiving, collectively, overall compensation exceeding the limits of an underinsured motorist policy. GEICO responds that § 38a-336(b) is clear in requiring that "in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's underinsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage" and that the plaintiffs' position would result in "the anomaly of a greater recovery under those [underinsured motorist] policy provisions than would have been available from a tortfeasor carrying liability insurance equal to the coverage of the insured." Bennett v. Automobile Ins.Co., 230 Conn. 795, 800-01, 646 A.2d 806 (1994).
"The objective in analyzing legislative action is to discern and effectuate the apparent intent of the legislature.State v. Blasko, 202 Conn. 541, 553, 522 A.2d 753
(1987). In doing so, `[w]e look first to the plain, unambiguous language of the statute.' Arway v. Bloom,29 Conn. App. 469, 473, 615 A.2d 1075 (1992), cert. granted, 224 Conn. 924, 618 A.2d 530 (1992). Unless CT Page 955 the statute is ambiguous, it is unnecessary and indeed improper to engage in an analysis of the history underlying the statute. Klug v. Inland Wetlands Commission,30 Conn. App. 85, 90, 619 A.2d 8 (1993)." Black v. London Egazarian Associates, Inc., 30 Conn. App. 295, 300,620 A.2d 176, cert. denied, 225 Conn. 916,623 A.2d 1024 (1993). "[S]imply because the parties contend for different meanings does not necessitate a conclusion that the language is ambiguous." Aetna Life CasualtyCo. v. Bulaong, 218 Conn. 51, 60, 588 A.2d 138 (1991); see SS Tobacco Candy v. Greater New York MutualIns., 224 Conn. 313, 320, 617 A.2d 1388 (1992); Griffithv. Security Ins. Co., 167 Conn. 450, 454, 356 A.2d 94
(1975); Marcolini v. Allstate Ins. Co., 160 Conn. 280, 284,278 A.2d 796 (1971). However, "[a] word or statute is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses. Federal Aviation Administration v. Administrator,196 Conn. 546, 554, 494 A.2d 564 (1985) (Healy, J. dissenting), citing Vernon v. Waukesha County, 99 Wis.2d 472,477, 299 N.W.2d 593 (1980), aff'd, 102 Wis.2d 686,307 N.W.2d 227 (1981); 73 Am.Jur.2d, Statutes 258 (1974)." (Internal quotation marks omitted.) AetnaLife Casualty Co. v. Braccidiferro, 34 Conn. App. 833,840, 643 A.2d 1305 (1994). General Statutes § 38a-336(b) provides in relevant part that "in no event shall the total amount of recovery from all policies . . . exceed the limits of the insured's uninsured motorist coverage." The plaintiffs contend that the "recovery" to which the statute refers is recovery by the insured making the underinsured motorist claim. The defendant contends that "recovery" refers to recovery by all insureds, whether or not they subsequently seek underinsured motorist benefits, so that recovery by all insureds reduces the available underinsured motorist coverage whether or not an insured makes an underinsured motorist claim. The statute is silent as to whom the recovery must be made. "The scope of this statute is ambiguous when applied to the facts of this case." In re Valerie D., 223 Conn. 492,512, 613 A.2d 748 (1992); cf. General Accident Ins. Co.v. Wheeler, 221 Conn. 206, 210, 603 A.2d 385 (1992).
"Because this [statute] is ambiguous, we must turn for guidance to the legislative history and the purpose the statute is to serve. State v. Mattioli, 210 Conn. 573, CT Page 956 576. 556 A.2d 584 (1989)." Augeri v. Planning ZoningCommission, 24 Conn. App. 172, 176, 586 A.2d 635, cert. denied, 218 Conn. 904, 588 A.2d 1383 (1991). The legislative history of the act which amended the uninsured motorist statute to provide for underinsured motorist coverage, Public Act No. 79-235, is silent on the issue before the court. See 22 S.Proc., Pt. 5, 1979 Sess., pp. 1353-54, 1369-71, 1520; 22 H.R. Proc., Pt. 16, 1979 Sess., pp. 5339-43; Joint Standing Committee, Insurance Real Estate, Part 2, 1979 Sess., pp. 100-01, 112, 124.[4]
Turning next to the policy and purpose behind our underinsured motorist statute, we find that the Supreme Court has repeatedly stated that "[t]he purpose of § 38-175c [now § 38a-336] is to compensate an insured to the same extent as he would have been if he had been injured by a motorist carrying liability insurance equal to the coverage carried by the insured, unless the insured has elected in writing uninsured motorist coverage in an amount less than his liability coverage." Mass. v. UnitedStates Fidelity Guaranty Co., 222 Conn. 631, 647,610 A.2d 1185 (1992); see Bennett v. Automobile Ins. Co. ofHartford, 230 Conn. 795, 800-01, 646 A.2d 806 (1994);Smith v. Safeco Ins. Co. of America, 225 Conn. 566, 573.624 A.2d 892 (1993); Harvey v. Travelers Indemnity Co.,188 Conn. 245, 249, 449 A.2d 245 (1982).[5] As GEICO emphasizes, if the plaintiffs had been injured by a tortfeasor having liability limits of $900,000 they would have only been able to recover $582,000 since another victim, the estate of Lawrence Ohmes, would have recovered $318,000 from the limits of that policy. This result, however, is not mandated by the statute for the following reasons.
First, the canons of statutory construction do not support the defendant's reading of General Statutes § 38-336(b). "Our well established principles of statutory construction are designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature." Ruskewich v. Commissionerof Revenue Services, 213 Conn. 19, 23-24,566 A.2d 658 (1989). "In seeking to discern the intent of the legislature, we look to the words of the statute as a whole to offer guidance." Id., 25. "A legislative act CT Page 957 must be read as a whole and construed to give effect and to harmonize all of its parts. (Internal quotation marks omitted.) Hayes v. Smith, 194 Conn. 52, 58,480 A.2d 425 (1984). General Statutes § 38a-336(b) exists, as it was written, as a single sentence. The phrase in § 38a-336 which states "but in no event shall the total amount of recovery from all policies . . . exceed the limits of the insured's uninsured motorist coverage," follows the initial phrase: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after [all other policies have been exhausted] . . ." (Emphasis added.) "[U]nder the maxim of `noscitur a sociis,' the meaning of a particular word or phrase in a statute is ascertained by reference to those words or phrases with which it is associated." Staples v. Palten, 214 Conn. 195, 199,571 A.2d 97 (1990). In addition, the word "but" in a statute is a word of exception. Webster's Ninth New Collegiate Dictionary (1991); Black's Law Dictionary (6th Ed.); Kimura v. Hawaii County, 417 P.2d 977, 984
(Haw. 1966); In re Naftzger's Estate, 24 Cal.2d 595,150 P.2d 873, 875 (1944). Applying these principles to the statute at hand makes clear that the second portion of § 38a-336(b) ("but in no event . . .") qualifies the first portion ("An insurance company shall be obligated. . ."). That is, the portion of the statute on which the defendant relies limits the obligation of an insurer.[6] It neither mandates the diminution of coverage nor of damages in the absence of an express and valid provision in the policy of insurance.
Secondly, "[i]n addressing this question, we do not write on a clean slate." Luf v. Southbury, 188 Conn. 336,349, 449 A.2d 1001 (1982). While the precise statutory issue presented here has not yet been decided on appeal, our Supreme Court and Appellate Court repeatedly have held that the only manner and extent to which an insurer may limit its liability for underinsured motorist benefits to an insured-claimant is (1) if the insurer's policy of insurance so provides, and (2) the provision in the policy of insurance complies with General Statutes § 38a-336 or § 38a-334-6(d) formerly § 38-175a-6(d) of the Regulations of Connecticut State Agencies.[7]
CT Page 958
In Stephan v. Pennsylvania General Ins. Co.,224 Conn. 758, 621 A.2d 258 (1993), while riding as a passenger in a vehicle she owned, the plaintiff was injured when her vehicle collided with another vehicle. The plaintiff recovered $100,000 from the insurer of the other vehicle. Another passenger of her car, the plaintiff and the operator of the other car also collectively exhausted the $100,000 liability limit of the policy insuring the plaintiff's vehicle which had been issued by the named defendant Pennsylvania General Insurance Company. The plaintiff then made a claim for underinsured motorist benefits under that policy and another policy issued to her parents by Phoenix General Insurance Company.
The Supreme Court observed that "[t]his appeal presents the following issue: . . . whether the trial court improperly allowed Pennsylvania General Insurance Company (Pennsylvania) and Phoenix General Insurance Company (Phoenix), who provided underinsured motorist coverage, to limit their liability to the insured by taking credit for liability payments made to other claimants . . ." Id., 760. The court stated that it would "begin our analysis by determining whether the terms of Stephan's insurance policies permitted Phoenix and Pennsylvania to reduce the damages owed to her by taking credit for payments made to others injured in the accident. If we determine that the policies do not allow the reduction, we need not go further to ascertain whether the reduction would be valid under General Statutes 38a-336(b), formerly General Statutes 38-175c(b)(1), or 38-175a-6(d) of the Regulations of Connecticut State Agencies." Id., 763. The court "conclude[d] that the policies did not permit Phoenix and Pennsylvania to reduce the damages owed to Stephan by taking credit for payments made to others. Accordingly," explained the Supreme Court, "we need not determine whether the reduction would be permitted by General Statutes 38a-336(b) or 38-175a-6(d) of the Regulations of Connecticut State Agencies."Id., 764-65.
In Buell v. American Universal Ins. Co., 224 Conn. 766,621 A.2d 258 (1993), the issue was substantially CT Page 959 similar to that presented in Stephan. In Buell, the court also held that "the policy did not permit [the defendant] American to reduce the damages owed to Buell by taking credit for the payment to [another]. Moreover, because the policy does not permit the insurer to take credit for this payment, we need not gofurther to determine whether General Statutes 38a-336(b)
or 38-175a-6(d) of the Regulations of Connecticut State Agencies would permit the credit." (Emphasis added.) Id., 771.
Neither Stephan nor Buell is dispositive here since the issue in this case, whether General Statutes § 38a-336(b) mandates that tort recoveries by all persons (or at least all persons insured under the same underinsured motorist policy) reduce the limits of underinsured motorist coverage, was not presented in those cases. "It is the general rule that a case resolves only those issues explicitly decided in the case." State v.Ouellett, 190 Conn. 84, 91, 459 A.2d 1005 (1993). Neither, however, is the language in those decisions dicta. Dicta consist of "expressions in an opinion of the court which are not necessary to support the decision." Ballentine's Law Dictionary (3rd Ed. 1969); see Sharkiewicz v. Smith, 142 Conn. 410, 412,114 A.2d 691 (1955). Stephan and Buell "although not identical to the present case, [are] nevertheless instructive on two counts." Olean v. Treglia, 190 Conn. 756,760, 463 A.2d 242 (1983). First, in both cases the issue was whether an insurer providing uninsured motorist coverage could limit its liability to an insured by taking credit for liability payments made to other claimants by another insurer. Second, in both cases the court explicitly cited General Statutes § 38a-336(b). "Cases decided pursuant to that statute are instructive." Jackson v. Jackson, 9 Conn. App. 290,292, 518 A.2d 666 (1986), cert. denied, 202 Conn. 804,519 A.2d 1208 (1987). In both cases the court held that the starting point for analysis must be the insurance policy and that the statute, § 38a-336, and the administrative regulation promulgated thereunder were relevant only to determine if a policy provision providing for such a credit was valid. Had the court been of the opinion that the statute alone was dispositive, it would have fashioned its analysis differently CT Page 960 and so held. Cf. Hartford Federal Savings Loan Assn.v. Tucker, 181 Conn. 607, 609, 436 A.2d 1259 (1980) (plain error for a court to overlook a clearly applicable statute); In re Jonathan P., 23 Conn. App. 207, 211,579 A.2d 587 (1990) (same).
In Allstate Ins. Co. v. Lenda, 34 Conn. App. 444,642 A.2d 22, cert. denied, 231 Conn. 906, 648 A.2d 149
(1994), the Appellate Court held that the plaintiff insurer could reduce the amount of underinsured motorist benefits payable to its insured. It did so, however, not on the basis of any statutory mandate contained in General Statutes § 38a-336(b). Rather, the Appellate court followed the same two-step methodology articulated in Stephan and in Buell. First, the court looked to the terms of the particular insurance policy before it. Said the court: "We begin our analysis by determining whether the terms of Lenda's insurance policy permitted Allstate to reduce the amount owed to Lenda for underinsured motorist coverage by . . . payments made by or on behalf of [the tortfeasor] to other persons injured in the accident . . ." (Emphasis added.) Id., 451-52. After determining that the Allstate policy permitted such a reduction, the court "next . . . determine[d] whether the reduction is allowed
under § 38a-334-6 of the Regulations of Connecticut State Agencies." (Emphasis added.) Id., 453. The court determined that the reduction was allowed by the regulation. Id., 454-56.
The issue again was addressed in United States Fidelity Guaranty Co. v. Pitruzzello, 35 Conn. App. 638,646 A.2d 936, cert. denied, 231 Conn. 933, 649 A.2d 255
(1994). That case is substantially similar, albeit not identical, to this case. There, the defendants Pitruzzello, Kreder and Catalano were injured while occupying Kreder's car. They recovered damages from the tortfeasor's liability carrier, then obtained arbitrated awards of underinsured motorist benefits under a $50,000 single limit policy issued by the plaintiff to Kreder. As here, all the defendants in Pitruzzello were insureds under the underinsured motorist policy. And, as the plaintiffs seek here, the defendants' collective recoveries in Pitruzzello, from the tortfeasor's insurer and from the underinsured motorist carrier, exceeded the CT Page 961 limits of the underinsured motorist carrier's limits.
The Appellate Court held that the specific terms of the insurance policy before it did not allow for a reduction in underinsured motorist benefits on account of monies otherwise paid to persons other than the particular claimant who was seeking an award.United States Fidelity Guaranty Co. v. Pitruzzello, supra, 35 Conn. App. 641-42. The court added: "The specific terms of the underinsured motorist provision of the policy are not vitiated by the relevant language in American Motorist Ins. Co. v. Gould, supra,213 Conn. 631, and its progeny, regarding the policy behind General Statutes § 38a-336. The legislative intent behind the underinsured motorist statute has been defined repeatedly as `to assure that every insured recovers damages he or she would have been able to recover if the uninsured [or underinsured] motorist had maintained a policy of liability insurance.' J. Berk M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 1.3; see alsoSmith v. Safeco Ins. Co. of America, 225 Conn. 566,573, 624 A.2d 892 (1993); Bodner v. United ServicesAutomobile Assn., 222 Conn. 480, 499, 610 A.2d 1212
(1992). There is no public policy, however, against allowing an injured party to recover more than he would have had the tortfeasor maintained a policy of liability insurance equal in amount to the underinsured motorist coverage of the claimant, as long as the injured party does not recover more than is necessary to make him whole. Buell v. American Universal Ins.Co., supra, 224 Conn. 775; Rydingsword v. LibertyMutual Ins. Co., 224 Conn. 8, 18-19, 615 A.2d 1032
(1992). In this case, the defendants are not attempting a double recovery; they are merely attempting to be compensated for their actual damages as found by the arbitration panel pursuant to an underinsured motorist provision identical to that in Stephan v. PennsylvaniaGeneral Ins. Co., supra, 224 Conn. 758. They are entitled to the benefits expressly provided by the insurance contract." Id., 644-45. The court expressly held "that, in this case, the specific terms of the underinsured motorist provision at issue do not entitle the plaintiff to credits for payments made to other claimants in calculating the offset of damages owed to CT Page 962 each of the defendants and, therefore, that the collective claimants may recover an amount in excess of the underinsured motorist coverage." Id., 645.
This brings us to Covenant Ins. Co. v. Coon,220 Conn. 30, 594 A.2d 977 (1991). In that case the court itself stated: "The [only] issues on appeal are: (1) whether in determining if a vehicle is `underinsured' within the meaning of General Statutes 38a-336(d), the limit of a tortfeasor's liability insurance is construed to be the policy's per accident limit or per person limit; and (2) whether underinsured motorist coverage under separate policies covering the victim may be `stacked' for the purposes of determining if a vehicle is underinsured." (Footnote defining "stacking" omitted.) Id., 31. After deciding those two issues and finding that the defendant had $50,000 underinsured motorist coverage available under the insurance policy of the plaintiff (Covenant) the court "next address[ed] the separate question of how much is due Coon. Section 38a-336(b) states: `An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage . . . but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.' Thus the $50,000 available under the Covenant policy forms an upper limit beyond which the victim cannot recover from Covenant. The recovery from Covenant therefore must be reduced by the $25,000 already paid to the victim from the Aetna policy. The total recovery for the victim from Covenant is thus $50,000 minus $25,000, or $25,000." Id., 37-38. That is the sum total of the court's discussion on the interpretation of General Statutes § 38a-336(b).
The defendant GEICO argues that Coon holds that all monies paid by or on behalf of the tortfeasor to all insureds must be deducted, by statutory mandate, from the limits of underinsured motorist coverage. This court does not agree. First, according to the Coon
court's own statement, the interpretation or application of General Statutes § 38a-336(b) was not one of the issues before it. "It is the general rule that a case CT Page 963 resolves only those issues explicitly decided in the case." State v. Ouellette, 190 Conn. 84, 91,459 A.2d 1005 (1983). "Under the accepted rule, the doctrine of stare decisis contemplates only such points as are actually involved and determined in a case, and not what is said by the court on points not necessarily involved therein." Riley v. Board of Police Commissioners,145 Conn. 1, 5, 137 A.2d 759 (1958). "The statements relied upon," in Coon, "were made in the course of a discussion by the court of the subject before it and with no intent to lay down in positive form a rule of law." Sharkiewicz v. Smith, 142 Conn. 410, 412,114 A.2d 691 (1991). This is reflected by the fact that the statement in Coon that "[t]he recovery from Covenant . . . must be reduced by the $25,000 already paid to the victim from the Aetna policy" is not "supported by argument or explanation." State v. Clemente,166 Conn. 501, 544, 353 A.2d 723 (1974) (Bogdanski, J., dissenting). Also, it is noteworthy that the underinsured motorist provisions in Covenant's policy in fact provided for a deduction from benefits for sums "[p]aid because of the `bodily injury' by or on behalf of persons or organizations who may be legally responsible." Connecticut Supreme Court Records Briefs, May 1991 term, Covenant Ins. Co. v. Coon, Record, page 10, on microfiche, Fiche 1 of 3. Indeed, a review of the appellate briefs filed in that case reflects that there was no dispute that the plaintiff insurer in Coon was entitled to deduct the claimant's tort recovery from her underinsured motorist coverage. The dispute was about what the limits of that coverage were, from which the deduction would be made.
Most importantly, GEICO's claim that Coon is dispositive is inconsistent with the subsequent treatment of General Statutes § 38a-336(b) and the issue of the reduction of underinsured motorist benefits by tort recoveries by the Supreme Court in Stephan v. PennsylvaniaGeneral Ins. Co., supra, and Buell v. AmericanUniversal Ins. Co., supra, and by the Appellate Court in Allstate Ins. Co. v. Lenda and Pitruzzello v. UnitedStates Fidelity Guaranty Co., supra. If Coon were dispositive, the courts in those cases would not have employed the two-tier analysis whereby they (1) determined whether the underinsured motorist policy or CT Page 964 policies allowed for such a reduction, and then (2) whether such a policy provision was valid under the applicable state regulation. "`It is an established rule of law that a later decision overrules prior decisions which conflict with it, whether such prior decisions are mentioned and commented upon or not.' In re Lane,58 Cal.2d 99, 105, 372 P.2d 897, 22 Cal.Rptr. 857
(1962); see Solban Construction Co. v. Government ofthe Territory of the Pacific Islands, 526 F. Sup. 135, 142
(D.C. Mariana Islands 1981)." State v. Dukes,209 Conn. 98, 110, 547 A.2d 10 (1988).
The court holds that, contrary to the decision of the majority of the arbitrators, General Statutes § 38a-336(b) does not mandate that payments made on behalf of a tortfeasor to persons other than the particular claimant for underinsured motorist benefits be deducted from the coverage or benefits of that claimant.[8]
 III.
"The remaining issue in this case is the form of our rescript." Wilson v. Kelley, 224 Conn. 110, 123,617 A.2d 433 (1992). As discussed supra, after the issues of coverage and damages had been bifurcated by agreement of the parties, the arbitrators issued their award on June 27, 1994 in which two of the three arbitrators found that General Statutes § 38a-336(b) barred the plaintiffs from any further recovery against GEICO. Based on that finding the two majority arbitrators concluded that it was unnecessary to determine whether GEICO was entitled to a credit under the terms of itsinsurance policy for the payment made to the estate of Lawrence Ohmes by Spittle's insurer. The third arbitrator issued a dissenting opinion in which he not only disagreed with the majority with respect to the interpretation of General Statutes § 38a-336(b), but opined that GEICO was not entitled to a credit for the payment to the estate of Lawrence Ohmes by Spittle's insurer. The following month one of the majority arbitrators issued a separate opinion stating that while he believed that the issue of whether GEICO was entitled to the credit was moot, he concurred in the reasoning of the dissenting arbitrator that GEICO was not entitled to a credit under the terms of its policy for the payment made to the estate CT Page 965 of Lawrence Ohmes.
At least with respect to arbitration panels which are not institutional in nature and do not exercise a continuing jurisdiction, the general rule is that "the authority of arbitrators terminates with the making of a valid, final award." 5 Am.Jur.2d, Arbitration and Award, § 96; see also 6 C.J.S., Arbitration, § 72a. Therefore, the subsequent concurrence of two of the arbitrators that GEICO was not entitled to a credit under the terms of its policy for the payment made to the estate of Lawrence Ohmes is of no effect.
"If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators." General Statutes § 52-418(2).
In case #315990 GEICO's application to confirm the award is denied. In case #316002, the plaintiffs' application to vacate the award is granted and the case is remanded to the arbitrators for further proceedings consistent with this opinion.