WILLIAM R. BERKLEY ET AL. *v.* GENE GAVIN,
COMMISSIONER OF REVENUE SERVICES
(SC 16142)

Borden, Norcott, Palmer, Sullivan, and Vertefeuille, Js.[1]

---

[1] Justice Robert I. Berdon was a member of the original panel that heard oral argument in this case. Justice Berdon ended his service as a justice of this court on December 24, 1999, prior to this court's resolution of the merits of the appeal. Accordingly, the Chief Justice designated Justice Vertefeuille to replace Justice Berdon in this case. Thereafter, Justice Vertefeuille read the record, briefs and transcript of the original oral argument and participated in the resolution of this case.

Argued September 30, 1999—officially released July 25, 2000

*Charles H. Lenore*, with whom was *Eric R. Jones*, for the appellants (plaintiffs).

*Robert L. Klein*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiffs, William Berkley and Marjorie Berkley, appeal from the judgment of the trial court dismissing their appeal from the assessment by the defendant, the commissioner of revenue services,

against the plaintiffs of an additional $393,263.01 in state income taxes for the 1994 taxable year. The principal issues in this appeal are: (1) whether the federal tax benefit rule is incorporated into the definition of "adjusted gross income" contained in General Statutes § 12-701 (a) (19);[2] and (2) if so, whether the plaintiffs are entitled to claim a deduction under the tax benefit rule due to the pass-through of certain losses incurred by subchapter S corporations of which William Berkley was a shareholder, even though the plaintiffs previously had avoided paying $1,297,189.63 in Connecticut capital gains, dividends and interest taxes as a result of those same passed-through losses.

We conclude that the federal tax benefit rule is incorporated into the definition of adjusted gross income contained in § 12-701 (a) (19). We further conclude that the plaintiffs had already received a tax benefit due to the aforementioned losses by virtue of the resultant reduction in their 1988, 1989, and 1990 federal adjusted gross income, which allowed them to avoid paying $1,297,189.63 in Connecticut capital gains, dividends and interest taxes. Therefore, they were not entitled to claim such a benefit a second time on their 1994 Connecticut income tax return. We therefore affirm the judgment of the trial court.

The parties in this case have stipulated to the following relevant facts. The plaintiffs are a married couple residing in Greenwich. William Berkley was a shareholder in three S corporations:[3] Farm Acquisition Corporation (Farm Acquisition), Interlaken Grove Investors, Inc. (Interlaken Grove), and Caring Communities, Inc. (Caring Communities). Two of those corpo-

---

[2] General Statutes § 12-701 (a) (19) provides: " 'Adjusted gross income' means the adjusted gross income of a natural person with respect to any taxable year, as determined for federal income tax purposes."

[3] An S corporation is a small business corporation that qualifies for certain tax and financial prerogatives. See 26 U.S.C. § 1361 et seq.

rations, Farm Acquisition and Caring Communities, reported ordinary losses on their 1988, 1989, and 1990 federal income tax returns and the third corporation, Interlaken Grove, reported ordinary losses on its 1989 and 1990 tax returns. Pursuant to 26 U.S.C. § 1366 (a) (1),[4] the plaintiffs deducted William Berkley's pro rata share of the losses reported by Farm Acquisition and Caring Communities on their federal income tax returns for those three years, and his pro rata share of the losses reported by Interlaken Grove for the 1989 and 1990 tax years. William Berkley's bases in the stock of those three corporations then was reduced by the amount of the deductions. See 26 U.S.C. § 1367 (a) (2).

During 1988, 1989 and 1990, Connecticut imposed a tax on capital gains, dividends and interest income (capital gains tax) pursuant to General Statutes §§ 12-505 through 12-522, but did not tax any other income. For each of those years, the tax rates on capital gains, dividends and interest income were tied to the taxpayer's federal adjusted gross income.[5] If, however, a tax-

---

[4] Section 1366 (a) (1) of title 26 of the United States Code provides in relevant part: "In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends . . . there shall be taken into account the shareholder's pro rata share of the corporation's

"(A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and

"(B) nonseparately computed income or loss."

[5] For the 1988 Connecticut tax year, General Statutes (Rev. to 1987) § 12-506 (a) (1), as amended by Public Acts 1987, No. 87-559, §§ 2 and 3, imposed a tax on a sliding scale on all dividends and interest income, except that no such tax would be imposed unless the taxpayer's adjusted gross income as determined for federal tax purposes; see General Statutes (Rev. to 1987) § 12-505 (a) (9) for definition of "adjusted gross income"; exceeded $54,000. Section 12-506 (a) (2) at that time imposed a tax at the rate of 7 percent, except that, under § 12-506 (b), a taxpayer whose adjusted gross income did not exceed a certain level was not subject to such a tax.

For the 1989 Connecticut tax year, General Statutes (Rev. to 1989) § 12-506 (a) (1), as amended by Public Acts 1989, No. 89-251, §§ 17 and 203, imposed a tax on a sliding scale on all dividends and interest income, except that no such tax would be imposed unless the taxpayer's adjusted gross

payer's federal adjusted gross income fell below a certain level, that taxpayer had no obligation to pay Connecticut's capital gains tax.

As a result of the losses passed through the three S corporations in which William Berkley was a shareholder, the plaintiffs' federal adjusted gross income for the tax years 1988, 1989 and 1990 was negative. Accordingly, the plaintiffs paid no state capital gains tax for those three years. If the plaintiffs' federal adjusted gross income for those years had not been reduced by their deduction of the pass-through losses from the three S corporations, the plaintiffs would have owed a total of $1,297,189.63 in state capital gains taxes for those three years.

For the 1994 tax year, the plaintiffs reported "worthless stock" losses for federal income tax purposes with respect to William Berkley's stock in all three S corporations. At that time, his bases in the stock of the three S corporations had been reduced to $3,623,671. The federal tax code allowed the plaintiffs to deduct the adjusted bases of $3,623,671 from their 1994 long-term capital gains reported in their 1994 federal income tax return. The plaintiffs' federal adjusted gross income for the 1994 tax year was $8,342,817.

In October, 1995, the plaintiffs timely filed a "Form CT-1040 Connecticut Resident Income Tax Return" for

income exceeded $54,000. At that time, § 12-506 (a) (2), as amended by Public Act 89-251, imposed a tax at the rate of 7 percent on all gains from the sale or exchange of capital assets, except that "the amount of tax payable by any taxpayer under this subdivision (2) with respect to such gains for any taxable year may not exceed an amount equal to five per cent of the adjusted gross income of such taxpayer for such taxable year, as determined for purposes of the federal income tax."

For the purposes of this case, the Connecticut dividends, interest and capital gains tax statutes applicable in the 1990 Connecticut tax year imposed the same rates and allowed the same exceptions as those applicable in the 1989 tax year. See General Statutes (Rev. to 1991) § 12-506 (a), which, in effect, codified the 1989 revision of the statute and Public Act 89-251.

the 1994 tax year, on which they reported an overpayment of $496,123. In computing their 1994 Connecticut taxable income, the plaintiffs subtracted from their federal adjusted gross income of $8,342,817, the sum of $9,743,387, representing the aggregate reductions to the bases of the stock held by William Berkley in the three S corporations in 1988, 1989 and 1990. The plaintiffs subsequently agreed to limit the contested basis adjustment to $6,541,489, representing the total basis adjustment excluding depreciation and amortization.[6] If the plaintiffs' deduction of the basis adjustment from the Connecticut basis in William Berkley's S corporation stock in computing their Connecticut adjusted gross income for 1994 were permissible, the plaintiffs would be entitled to a refund of $294,367, plus interest, for the 1994 tax year.

In addition, the record reveals the following other relevant facts. In February, 1996, the defendant notified the plaintiffs of a proposed recalculation of their 1994 Connecticut income tax, under which the defendant intended to assess against the plaintiffs an additional liability of $393,263.01. In April, 1996, the defendant sent a notice of the additional assessment to the plaintiffs. On May 17, 1996, the plaintiffs appealed the defendant's assessment to the Tax Session of the Superior Court.

The trial court issued a written memorandum of decision in favor of the defendant. In that memorandum, the trial court initially concluded that "[t]he tax benefit rule is alive and well in Connecticut." The trial court further concluded, however, that "the [plaintiffs] avoided paying a Connecticut [capital gains tax] on a substantial amount of income because . . . the pass-

---

[6] The tax benefit rule, as codified at 26 U.S.C. § 111, does not apply to recoveries of depreciation, depletion, amortization or amortizable bond premiums. 26 C.F.R. § 1.111-1 (a).

through losses of the three S corporations were used in the determination of their federal adjusted gross income for 1989–90. They are not now entitled to a double benefit by excluding the losses in the determination of the basis of the three S corporations for capital gains purposes in determining their adjusted gross income under the Connecticut personal income tax." Accordingly, the trial court rendered judgment dismissing the plaintiffs' appeal. Thereafter, the plaintiffs appealed the trial court's judgment to the Appellate Court, and we granted the defendant's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

On appeal, the plaintiffs argue that, although the trial court properly concluded that the federal tax benefit rule applies to Connecticut's personal income tax, the trial court improperly concluded that the plaintiffs' S corporation losses could not be excluded, pursuant to the tax benefit rule, from the plaintiffs' Connecticut adjusted gross income. We affirm the judgment of the trial court in both respects.

I

At the outset, a brief explanation of the federal tax benefit rule is warranted. The tax benefit rule is "a judicially developed principle that allays some of the inflexibilities of the annual accounting system. An annual accounting system is a practical necessity if the federal income tax is to produce revenue ascertainable and payable at regular intervals. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359, 365, [51 S. Ct. 150, 75 L. Ed. 2 383] (1931). Nevertheless, strict adherence to an annual accounting system would create transactional inequities. Often an apparently completed transaction will reopen unexpectedly in a subsequent tax year, rendering the initial reporting improper. For instance, if a taxpayer held a note that became apparently uncollect-

ible early in the taxable year, but the debtor made an unexpected financial recovery before the close of the year and paid the debt, the transaction would have no tax consequences for the taxpayer, for the repayment of the principal would be recovery of capital. If, however, the debtor's financial recovery and the resulting repayment took place after the close of the taxable year, the taxpayer would have a deduction for the apparently bad debt in the first year under § 166 (a) of the [Internal Revenue] Code, 26 U.S.C. § 166 (a). Without the tax benefit rule, the repayment in the second year, representing a return of capital, would not be taxable. The second transaction, then, although economically identical to the first, could, because of the differences in accounting, yield drastically different tax consequences. The Government, by allowing a deduction that it could not have known to be improper at the time, would be foreclosed from recouping any of the tax saved because of the improper deduction. Recognizing and seeking to avoid the possible distortions of income, the courts have long required the taxpayer to recognize the repayment in the second year as income." *Hillsboro National Bank* v. *Commissioner of Internal Revenue*, 460 U.S. 370, 377–79, 103 S. Ct. 1134, 75 L. Ed. 2d 130 (1983).

The tax benefit rule may be illustrated further by the following hypothetical example: If a taxpayer is owed $100 in connection with his trade or business and the debtor fails to pay the debt when it is due, the taxpayer may deduct the $100 loss as a bad debt. See 26 U.S.C. § 166 (a) (1). If the taxpayer's taxes are reduced as a result of the deduction (in other words, if he receives a "tax benefit"), and the taxpayer recovers the debt in a subsequent tax year, he must report the $100 as income. This represents the "inclusionary" aspect of the rule. See *Allstate Ins. Co.* v. *United States*, 936 F.2d 1271, 1274 (Fed. Cir. 1991). If, however, the taxpayer received

no tax benefit from the original deduction, he is not required to report the subsequent recovery, because he never received any tax benefit as a result of the loss. This represents the "exclusionary" aspect of the rule. See id.; see also 26 U.S.C. § 111 (a) ("[g]ross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter").

## II

Having delineated the parameters of the federal tax benefit rule, we now turn to the first issue in this appeal, namely, whether the federal tax benefit rule is incorporated into Connecticut's definition of adjusted gross income contained in § 12-701 (a) (19). The trial court concluded that the federal tax benefit rule is incorporated into Connecticut's personal income tax scheme. The plaintiffs contend that, in this respect, the trial court was correct. The defendant, to the contrary, contends that the federal tax benefit rule is not incorporated into our personal income tax scheme. We agree with the trial court and the plaintiffs.

The question of whether the federal tax benefit rule is incorporated into § 12-701 (a) (19) is one of statutory interpretation, which we review according to well settled principles. "Statutory interpretation is a matter of law over which this court's review is plenary. . . .   In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . .   In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .   *Doyle* v. *Metropolitan Property & Casu-*

*alty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999)." (Internal quotation marks omitted.) *Chief of Police* v. *Freedom of Information Commission*, 252 Conn. 377, 386–87, 746 A.2d 1264 (2000).[7]

We begin with the language of the statute, which provides that " '[a]djusted gross income' means the adjusted gross income of a natural person with respect to any taxable year, as determined for federal income tax purposes." General Statutes § 12-701 (a) (19). This definition is a part of Connecticut's overall personal income tax scheme. See General Statutes § 12-700 et seq. Section 12-701 (a) (20)[8] further modifies the defini-

[7] In his brief, the defendant claims that this court has "repeatedly stated that all exemptions and deductions from taxation are a 'matter of legislative grace' and . . . must be strictly construed against the taxpayers and in favor of the taxing authority." While we take no issue with this general principle, the question of whether the right to an exemption or deduction exists is separate and distinct from the question of what the legislature meant by " '[a]djusted gross income' . . . as determined for federal income tax purposes." General Statutes § 12-701 (a) (19). In our view, the proper interpretation of that phrase does not involve any determination of the existence, or nonexistence, of an exemption or deduction, inasmuch as the proper methodology for determining adjusted gross income predates, in the chronology of our income tax scheme, the question of exemptions or deductions.

[8] General Statutes (Rev. to 1993) § 12-701 (a) (20), as amended by Public Acts 1993, No. 93-74, § 39, and Public Acts, Spec. Sess., May, 1994, No. 94-4, § 26, provides: " 'Connecticut adjusted gross income' means adjusted gross income, with the following modifications: (A) There shall be added thereto (i) to the extent not properly includable in gross income for federal income tax purposes, any interest income from obligations issued by or on behalf of any state, political subdivision thereof, or public instrumentality, state or local authority, district or similar public entity, exclusive of such income from obligations issued by or on behalf of the state of Connecticut, any political subdivision thereof, or public instrumentality, state or local authority, district or similar public entity created under the laws of the state of Connecticut and exclusive of any such income with respect to which taxation by any state is prohibited by federal law, (ii) any exempt-interest dividends, as defined in Section 852 (b) (5) of the Internal Revenue Code, exclusive of such exempt-interest dividends derived from obligations issued by or on behalf of the state of Connecticut, any political subdivision thereof, or public instrumentality, state or local authority, district or similar public entity created under the laws of the state of Connecticut and exclusive of such

tion contained in § 12-701 (a) (19) by enumerating eigh-

exempt-interest dividends derived from obligations, the income with respect to which taxation by any state is prohibited by federal law, (iii) any interest or dividend income on obligations or securities of any authority, commission or instrumentality of the United States which federal law exempts from federal income tax but does not exempt from state income taxes, (iv) to the extent included in gross income for federal income tax purposes for the taxable year, the total taxable amount of a lump sum distribution for the taxable year deductible from such gross income in calculating federal adjusted gross income, (v) to the extent properly includable in determining the net gain or loss from the sale or other disposition of capital assets for federal income tax purposes, any loss from the sale or exchange of obligations issued by or on behalf of the state of Connecticut, any political subdivision thereof, or public instrumentality, state or local authority, district or similar public entity created under the laws of the state of Connecticut, in the income year such loss was recognized, (vi) to the extent deductible in determining federal adjusted gross income, any income taxes imposed by this state, (vii) to the extent deductible in determining federal adjusted gross income, any interest on indebtedness incurred or continued to purchase or carry obligations or securities the interest on which is exempt from tax under this chapter and (viii) expenses paid or incurred during the taxable year for the production or collection of income which is exempt from taxation under this chapter or the management, conservation or maintenance of property held for the production of such income, and the amortizable bond premium for the taxable year on any bond the interest on which is exempt from tax under this chapter to the extent that such expenses and premiums are deductible in determining federal adjusted gross income. (B) There shall be subtracted therefrom (i) to the extent properly includable in gross income for federal income tax purposes, any income with respect to which taxation by any state is prohibited by federal law, (ii) to the extent allowable under section 12-718, exempt dividends paid by a regulated investment company, (iii) the amount of any refund or credit for overpayment of income taxes imposed by this state, or any other state of the United States or a political subdivision thereof, or the District of Columbia or any province of Canada, to the extent properly includable in gross income for federal income tax purposes, (iv) to the extent properly includable in gross income for federal income tax purposes, any tier 1 railroad retirement benefits, (v) with respect to any natural person who is a shareholder of an S corporation which is carrying on, or which has the right to carry on, business in this state, as said term is used in section 12-214, the amount of such shareholder's pro rata share of such corporation's nonseparately computed items, as defined in Section 1366 of the Internal Revenue Code, multiplied by such corporation's apportionment fraction, if any, as determined in accordance with section 12-218, (vi) to the extent properly includable in gross income for federal income tax purposes, any interest income from obligations issued by or on behalf of the state of Connecticut, any

teen specific modifications, none of which is relevant to this case, that may be made to a taxpayer's adjusted gross income.

The central question that § 12-701 (a) (19) raises, but does not answer, is whether the phrase "as determined for federal income tax purposes," means as determined in accordance with federal income tax methodology, or as reported on a taxpayer's federal income tax return. Although there is no legislative history on this point, an examination of our prior case law leads us to con-

political subdivision thereof, or public instrumentality, state or local authority, district or similar public entity created under the laws of the state of Connecticut, (vii) to the extent properly includable in determining the net gain or loss from the sale or other disposition of capital assets for federal income tax purposes, any gain from the sale or exchange of obligations issued by or on behalf of the state of Connecticut, any political subdivision thereof, or public instrumentality, state or local authority, district or similar public entity created under the laws of the state of Connecticut, in the income year such gain was recognized, (viii) any interest on indebtedness incurred or continued to purchase or carry obligations or securities the interest on which is subject to tax under this chapter but exempt from federal income tax, to the extent that such interest on indebtedness is not deductible in determining federal adjusted gross income and is attributable to a trade or business carried on by such individual, (ix) ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income which is subject to taxation under this chapter but exempt from federal income tax, or the management, conservation or maintenance of property held for the production of such income, and the amortizable bond premium for the taxable year on any bond the interest on which is subject to tax under this chapter but exempt from federal income tax, to the extent that such expenses and premiums are not deductible in determining federal adjusted gross income and are attributable to a trade or business carried on by such individual and (x) an amount equal to the difference between the amount of Social Security benefits includable for federal income tax purposes under the provisions of Section 13215 of the Omnibus Budget Reconciliation Act of 1993 and the amount of such Social Security benefits includable for federal income tax purposes under the provisions of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, prior to August 10, 1993. With respect to a person who is the beneficiary of a trust or estate, there shall be added or subtracted, as the case may be, from adjusted gross income such person's share, as determined under section 12-714, in the Connecticut fiduciary adjustment."

clude that the former interpretation is the correct one, and that, therefore, § 12-701 (a) (19) does incorporate the federal tax benefit rule.

We long have held that "when our tax statutes refer to the federal tax code, federal tax concepts are incorporated into state law. *The B. F. Goodrich Co.* v. *Dubno*, 196 Conn. 1, 7, 490 A.2d 991 (1985); *Yaeger* v. *Dubno*, 188 Conn. 206, 210, 211–12, 449 A.2d 144 (1982); *Woodruff* v. *Tax Commissioner*, 185 Conn. 186, 191, 440 A.2d 854 (1981); *Peterson* v. *Sullivan*, 163 Conn. 520, 525, 313 A.2d 49 (1972); *Kellems* v. *Brown*, 163 Conn. 478, 518–19, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *First Federal Savings & Loan Assn.* v. *Connelly*, 142 Conn. 483, 489–93, 115 A.2d 455 (1955), appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1956); *McKesson & Robbins, Inc.* v. *Walsh*, 130 Conn. 460, 461–64, 35 A.2d 865 (1944)." (Internal quotation marks omitted.) *Harper* v. *Tax Commissioner*, 199 Conn. 133, 139, 506 A.2d 93 (1986). Although this rule does not require the wholesale incorporation of the entire body of federal tax principles into our state income tax scheme, where a reference to the federal tax code expressly is made in the language of a statute, and where incorporation of federal tax principles makes sense in light of the statutory language at issue, our prior cases uniformly have held that incorporation should take place.

*Harper* v. *Tax Commissioner*, supra, 199 Conn. 133, is an excellent example of such a scenario. The issue in *Harper* was whether patent sales fell within the ambit of the definition of taxable gains contained in General Statutes (Rev. to 1973) § 12-505, as amended by Public Acts 1973, No. 73-356, § 1,[9] which expressly defined

[9] General Statutes (Rev. to 1973) § 12-505, as amended by Public Acts 1973, No. 73-356, § 1, provided in relevant part: "[Taxable gains means] net gains as determined for federal income tax purposes . . . from sales or exchanges of capital assets . . . or from transactions or events taxable to the taxpayer such as sales or exchanges . . . under the provisions of the Internal Revenue Code in effect for the taxable year . . . ."

taxable gains as "net gain *as determined for federal income tax purposes* . . . ." (Emphasis added.) See *Harper* v. *Tax Commissioner*, supra, 139. We therefore referred to the federal tax code's treatment of patent sales in order to determine whether such sales constituted taxable gains. Id. *Harper* is not the only case in which we have employed such an approach. See, e.g., *The B. F. Goodrich Co.* v. *Dubno*, supra, 196 Conn. 7 (lack of any reference to federal tax code in text of General Statutes § 12-218 [2] meant court would not incorporate federal tax principles); *Woodruff* v. *Tax Commissioner*, supra, 185 Conn. 190–91 (§ 12-505 specifically incorporates "federal income tax scheme"); *First Federal Savings & Loan Assn.* v. *Connelly*, supra, 142 Conn. 492 (statutory definition of gross income " 'as defined in the federal corporation net income tax law' ").

It is a generally accepted principle that we construe statutes in accordance with the dictates of logic and common sense. See *State* v. *Jason B.*, 248 Conn. 543, 550, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). On the basis of this principle, we have, in the past, construed general statutory references to the federal tax code as incorporating federal tax principles into our statutes. We see no reason to reverse this policy, and to hamstring our legislature by requiring it to anticipate, and specifically refer to each and every doctrine of federal tax law whenever it concludes that employing federal tax methodology would be beneficial. We therefore conclude that the phrase "as determined for federal income tax purposes" contained in § 12-701 (a) (19) incorporates the federal tax benefit rule.

The defendant advances two principal arguments in support of his claim that the federal tax benefit rule is not incorporated into § 12-701 (a) (19). We find neither of these arguments persuasive.

The defendant first contends that this court's holding in *Ruskewich* v. *Commissioner of Revenue Services*, 213 Conn. 19, 566 A.2d 658 (1989), militates against the incorporation of the tax benefit rule into § 12-701 (a) (19). The issue in *Ruskewich* was "whether the [plaintiffs could] carry over and deduct a capital loss to calculate net gain on their Connecticut capital gains and dividends tax return when they [had] reported no carryover loss on their federal income tax return for the same taxable year." Id., 20. In order to decide that issue, the court was required to construe General Statutes (Rev. to 1983) § 12-505—specifically, the phrase " 'after due allowance for losses and holding periods.' " Id., 26. The court concluded that, based on the references in § 12-505 to the federal tax code, the language of § 12-505 at issue properly could be understood only by incorporation of federal tax principles. Id., 26–27.

The defendant claims that our incorporation of federal tax principles in *Ruskewich* was based on the inherent ambiguity of the phrase " 'after due allowance for losses and holding periods,' " and that, absent that ambiguous language in § 12-505, "[i]t is likely that *Ruskewich* . . . would have been decided differently . . . ." We do not agree with the defendant's conclusion. Although our opinion in *Ruskewich* seeks guidance from federal tax principles in order to clarify the meaning of § 12-505, it does not set forth a rigid rule requiring ambiguity in our state tax statutes before reference may be made to federal tax law. Indeed, *Ruskewich* expressly relied on the basic premise of *Harper* v. *Tax Commissioner*, supra, 199 Conn. 139, namely, that "when our tax statutes refer to the federal tax code, federal tax concepts are incorporated into state law." (Internal quotation marks omitted.) *Ruskewich* v. *Commissioner of Revenue Services*, supra, 213 Conn. 26. We therefore see no reason to cull from our decision

in *Ruskewich* additional restrictions on the applicability of federal tax concepts to our state income tax.[10]

The defendant's second claim is that because § 12-701 (a) (20) contains a specific list of the modifications that may be made to a taxpayer's adjusted gross income; see footnote 8 of this opinion; that list evidences the legislature's intent not to allow any other modifications to the adjusted gross income calculation. This contention ignores the plain language of the statute, which provides that " 'Connecticut adjusted gross income' *means adjusted gross income*, with the following modifications . . . ." (Emphasis added.) General Statutes (Rev. to 1993) § 12-701 (a) (20), as amended by Public Acts 1993, No. 93-74, § 39, and Public Acts, Spec. Sess., May, 1994, No. 94-4, § 26. This crucial phrase is itself defined in § 12-701 (a) (19) as "adjusted gross income . . . as determined for federal income tax purposes." It is clear, therefore, that the federal tax benefit rule is incorporated into § 12-701 (a) (19) as a part of the definitional phrase "adjusted gross income,"[11] and not

---

[10] For the same reason, the defendant's reliance on *Kellems* v. *Brown*, supra, 163 Conn. 478, also is misplaced. As with *Ruskewich*, *Kellems* did not contain any express limitation on the applicability of federal tax precepts.

[11] In support of its contention that § 12-701 (a) (19) does not incorporate the federal tax benefit rule, the dissent relies on the Connecticut Form CT-1040 for the 1994 tax year. Specifically, the dissent notes that line 1 of the form "simply requires the taxpayer to report the line item amount calculated on the federal form," and from this the dissent infers, based on the legislature's failure to amend § 12-701 (a) (19) subsequent to the issuance of the form, the legislature's acquiescence to that interpretation.

It is true that "[t]he legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation. *Martin* v. *Plainville*, 240 Conn. 105, 110, 689 A.2d 1125 (1997)." *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 783, 739 A.2d 238 (1999). It is also true, as the dissent notes, that we have applied this doctrine of legislative acquiescence to administrative interpretations of statutes. See id., 782–83; *Hansen* v. *Gordon*, 221 Conn. 29, 36, 602 A.2d 560 (1992). The dissent fails to acknowledge, however, that two of the links in the logical chain of the legislative acquiescence doctrine are missing from the facts of the present case.

as one of the eighteen modifications set forth in § 12-701 (a) (20). See footnote 8 of this opinion. Therefore, the question of whether the legislature intended that list to be exclusive is irrelevant to our determination of this issue.

In sum, we do not view this case as warranting a departure from our long-standing practice of allowing the legislature to refer to federal tax principles through the use of general referential language. Such a practice is in accord both with common sense, and our canons of statutory construction. We therefore conclude that the federal tax benefit rule is incorporated into the definition of "adjusted gross income" contained in § 12-701 (a) (19).[12]

First, the presumption of legislative awareness of prior administrative interpretations of a statute on which the doctrine is based has, as its factual underpinning, an interpretation in the form of a published *administrative opinion or ruling*. See, e.g., *Hansen* v. *Gordon,* supra, 221 Conn. 36 (interpretation of statutory definition of "occupational diseases" in *Cortes* v. *Allegheny Ludlum Steel Corp.,* 1 Conn. Workers' Comp. Rev. Op. 173, 181–82 [1982]); *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 196–97, 405 A.2d 638 (1978) (public utilities control authority decisions concerning electric rates); *Housing Authority* v. *Dorsey,* 164 Conn. 247, 253, 320 A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973) (written opinion of attorney general). We cannot say that a single line on a preprinted tax form should enjoy the same presumption of legislative awareness as those other written and published opinions. We think it unlikely that the legislature either was aware of that line on the form, or that the legislature understood that line as an interpretation of § 12-701 (a) (19).

Second, the legislative acquiescence doctrine requires actual acquiescence on the part of the legislature. In most of our prior cases, we have employed the doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue. The record in this case is devoid of evidence that the legislature made such a choice with respect to § 12-701 (a) (19).

[12] The dissent posits a hypothetical scenario in which a taxpayer, in the same tax year, receives a federal tax benefit due to a loss, but does not receive a Connecticut tax benefit from that same loss. As the hypothetical situation is not raised by the facts of the present case, we leave its resolution for another day.

## III

We turn next to the final issue in this appeal, namely, whether the plaintiffs are entitled to claim a deduction under the tax benefit rule due to the pass-through of certain losses incurred by the S corporations of which William Berkley was a shareholder, even though the plaintiffs previously had avoided paying $1,297,189.63 in Connecticut capital gains taxes as a result of those same passed-through losses. The defendant argues, as the trial court concluded, that the plaintiffs had received a tax benefit from those losses, and therefore were not entitled to claim such a benefit a second time on their 1994 Connecticut income tax return. We agree.

It is well settled "that deductions from otherwise taxable income are a matter of legislative grace and hence are strictly construed against the taxpayer. . . . *Skaarup Shipping Corporation* v. *Commissioner*, 199 Conn. 346, 352, 507 A.2d 988 (1986); *Golf Digest/Tennis, Inc.* v. *Dubno*, 203 Conn. 455, 464, 525 A.2d 106 (1987). Thus, in order for the taxpayers to prevail in their challenge of the commissioner's disallowance of these claimed deductions, they must establish clearly and unambiguously the right to claim a deduction . . . . *Golf Digest/Tennis, Inc.* v. *Dubno*, supra, 465." (Citations omitted; internal quotation marks omitted.) *Bolt Technology Corp.* v. *Commissioner of Revenue Services*, 213 Conn. 220, 227–28, 567 A.2d 371 (1989). In this case, the plaintiffs have failed to meet that substantial burden.

Although many of the cases, as well as the statutory codification of the tax benefit rule; see 26 U.S.C. § 111; speak in terms of income that was "deducted" in a prior tax year, actual deduction is not an absolute prerequisite to the applicability of the rule. See *Home Mutual Ins. Co.* v. *Commissioner of Internal Revenue* , 639 F.2d 333, 343 n.26 (7th Cir. 1980), cert. denied, 451 U.S.

1017, 101 S. Ct. 3005, 69 L. Ed. 2d 388 (1981) ("[t]he tax benefit rule is not limited to the recoveries of deductions"). Above all, it bears emphasis that the tax benefit rule "is an equitable doctrine which should be carried to an equitable conclusion." *Alice Phelan Sullivan Corp.* v. *United States*, 381 F.2d 399, 403 n.5 (Ct. Cl. 1967); see also *Hillsboro National Bank* v. *Commissioner of Internal Revenue*, supra, 460 U.S. 377 ("strict adherence to an annual accounting system would create transactional inequities"); 1 J. Mertens, Federal Income Taxation (1999 Rev.) § 7:26, p.7-77 ("[t]he purpose of the tax benefit rule is not merely to tax recoveries, but to approximate the results produced by a tax system based on transactional rather than annual accounting"). The salient inquiry in any tax benefit case, therefore, must be whether the application of the rule would help to "avoid . . . possible distortions of income"; *Hillsboro National Bank* v. *Commissioner of Internal Revenue*, supra, 378; that result from the inflexibilities of an annual accounting system.

In the present case, it is undisputed that because the plaintiffs' income greatly was reduced by the pass-through of the S corporation losses to William Berkley, the plaintiffs did not have to pay almost $1.3 million in Connecticut capital gains taxes in the 1988, 1989, and 1990 tax years. It also is undisputed that the plaintiffs' deduction of the pass-through losses from the three S corporations was the sole reason that they were able to avoid paying capital gains taxes for those three years. Given those two predicate facts, it would violate the purpose and spirit of the tax benefit rule were we to conclude that the plaintiffs have not already received a tax benefit from the pass-through of the S corporation losses. Such a conclusion would have the undesirable effect of allowing the plaintiffs to receive a double benefit from a single set of losses.

Although the plaintiffs make much of the alleged distinction between a deduction under the tax benefit rule, and the reduction in federal adjusted gross income that allowed them to avoid paying Connecticut capital gains taxes, that is a distinction without a difference. The tax benefit rule never has been constrained by such technicalities. Rather, courts generally have viewed it as a practical rule designed to ensure the smooth functioning of our tax system. See *Hillsboro National Bank* v. *Commissioner*, supra, 460 U.S. 377. In this case, the fact that the plaintiffs received a prior tax savings due to their pass-through losses is enough to prohibit them from claiming such a benefit a second time.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and PALMER, Js., concurred.

SULLIVAN, J., dissenting in part and concurring in the result. The majority holds that General Statutes § 12-701 (a) (19)[1] incorporates the federal tax benefit rule into Connecticut's income tax statutes, but that the plaintiffs are not entitled to the benefit of that rule in this case. I would hold that, while the dollar amount of "adjusted gross income . . . as determined for federal income tax purposes"; General Statutes § 12-701 (a) (19); reflects the operation of the *federal* tax benefit rule, there is no separate Connecticut tax benefit rule.

The majority concludes that it would "hamstring our legislature" to require it to anticipate and identify each doctrine of federal tax methodology that it wishes to incorporate into Connecticut tax statutes. I believe, however, that the majority has usurped the legislative function by incorporating a federal tax methodology, namely, the federal tax benefit rule, into § 12-701 (a)

---

[1] General Statutes § 12-701 (a) (19) provides: " 'Adjusted gross income' means the adjusted gross income of a natural person with respect to any taxable year, as determined for federal income tax purposes."

(19) when there is no indication that the legislature contemplated the incorporation of any such rule. In each case relied on by the majority in support of its stated principle that this court has "construed general statutory references to the federal tax code as incorporating federal tax principles into our statutes," this court had found in the particular statute under review: (1) an explicit reference to federal tax law; (2) a term that requires interpretation by reference to general tax concepts; and (3) *some* indication that the legislature intended the term under review to be interpreted in light of federal tax concepts. See, e.g., *Ruskewich* v. *Commissioner of Revenue Services*, 213 Conn. 19, 25–27, 566 A.2d 658 (1989) (construing statutory language "after due allowance for losses and holding periods," noting that "the legislature clearly intended that losses be accounted for when net gain is computed," that "[t]he only guidance the legislature [gave] on how to account for losses [was] through its reference to federal tax law" and that statute made "repeated reference to federal tax code," and holding that federal tax concepts applied for purposes of treating capital loss carryovers under Connecticut capital gains tax [internal quotation marks omitted]); *Harper* v. *Tax Commissioner*, 199 Conn. 133, 138–39, 506 A.2d 93 (1986) (considering whether sale of patent should be treated as sale of capital asset for purposes of statute governing Connecticut capital gains tax, which explicitly refers to federal tax code, and holding that federal tax concepts applied); see also *Kellems* v. *Brown*, 163 Conn. 478, 505–507, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S.Ct. 911, 34 L. Ed. 2d 678 (1973) (noting that "it is obvious that the legislature intended to incorporate and adopt" federal tax concepts and that statute shows a clear intent to adopt federal tax methodology, and holding that federal tax concepts apply for purposes of construing terms "occurring" and "net gains" in statute govern-

ing Connecticut capital gains tax [internal quotation marks omitted]).

In contrast to those cases, there is no explicit reference to the federal tax code in the income tax statute at issue in this case. Rather, the statute refers to "adjusted gross income . . . as determined for federal income tax *purposes*." (Emphasis added.) General Statutes § 12-701 (a) (19). For reasons set forth more fully later in this dissenting opinion, I believe that this phrase simply refers to a number, not a methodology. Accordingly, I do not believe that the statute contains any term, phrase or concept that requires interpretation by reference to the federal tax code. Therefore, I am not persuaded that the cases relied on by the majority support its conclusion that § 12-701 (a) (19) incorporates federal tax methodology. Rather, that statute incorporates the specific number derived from that methodology.

The majority holds that, even though § 12-701 (a) (19) makes no explicit reference to the federal tax code, much less to the tax benefit rule, "[i]t is clear. . . that the federal tax benefit rule is incorporated into § 12-701 (a) (19) as a part of the definitional phrase 'adjusted gross income' . . . ." The issue, however, is not whether the *federal* tax benefit rule will operate to exclude from taxation under the Connecticut statute income covered by the exclusionary aspect of the federal rule, or to include income covered by the inclusionary aspect of the rule. There is no dispute that it will. This is because, pursuant to 26 U.S.C. § 111,[2] the exclusionary aspect of the federal tax benefit rule, such income is not included in the calculation of federal

---

[2] Title 26 of the United States Code, § 111, provides in relevant part: "Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter. . . ." 26 U.S.C. § 111 (1994).

adjusted gross income that is reported on the federal tax return, on which the Connecticut income tax is imposed, as such reported income is modified, for Connecticut income tax purposes, pursuant to the modification provisions of General Statutes § 12-701 (a) (20).[3] Likewise, under the operation of the inclusionary aspect of the federal tax benefit rule, federal adjusted gross income will include recovered losses subject to the rule. The issue in this case is whether, after gross income is adjusted for purposes of the federal income tax, including adjustments to gross income pursuant to 26 U.S.C. § 111, the adjusted gross income reported on the federal income tax return may be adjusted further pursuant to a *Connecticut* tax benefit rule for Connecticut income tax purposes. I do not see any reason why it should be.

The following hypothetical, which is somewhat simpler than the facts of this case, illustrates one ramification of the majority's holding: A taxpayer, in year one, incurs a loss and receives a federal tax benefit because his income is reduced by that loss. For some reason, however, he receives no Connecticut tax benefit from the loss.[4] In year two, the taxpayer recovers the loss. The taxpayer must pay federal income tax on the recovered income in year two, pursuant to the inclusionary aspect of the tax benefit rule. Under the majority's holding, however, because the taxpayer received no Connecticut tax benefit in year one, he may exclude the recovered income for Connecticut income tax purposes in year two. Accordingly, the adjusted gross income reported on the taxpayer's federal income tax return in year two would have to be modified on his Connecticut income tax return to reflect the exclusion of the recovered loss for Connecticut income tax purposes.

[3] See footnote 8 of the majority opinion for the text of the relevant revision of General Statutes § 12-701 (a) (20).

[4] This can occur, even without the loss, because modifications to the taxpayer's income, pursuant to § 12-701 (a) (20), may reduce the taxpayer's income to an amount not subject to the imposition of the income tax.

I do not see how such a modification could be "for federal income tax purposes" pursuant to § 12-701 (a) (19). Furthermore, nothing in General Statutes (Rev. to 1993) § 12-701 (a) (20), as amended by Public Acts 1993, No. 93-74, § 39, and Public Acts, Spec. Sess., May, 1994, No. 94-4, § 26, suggests that such a modification was contemplated by the legislature. In that portion of the statute, the legislature, in defining " 'Connecticut adjusted gross income,' " provided eighteen specific modifications to adjusted gross income, not including any modification equivalent to the federal tax benefit rule. As the majority notes, this court repeatedly has held "that deductions from otherwise taxable income are a matter of legislative grace and hence are strictly construed against the taxpayer. . . . Thus, in order for the taxpayers to prevail in their challenge of the commissioner's disallowance of [their] claimed deductions, they must establish clearly and unambiguously the right to claim a deduction . . . ."[5] (Citations omitted; inter-

---

[5] The majority states that the existence of a Connecticut tax benefit rule for purposes of determining Connecticut adjusted gross income "does not involve any determination of the existence, or nonexistence, of an exemption or deduction, inasmuch as the proper methodology for determining adjusted gross income predates, in the chronology of our income tax scheme, the question of exemptions or deductions." Footnote 7 of the majority opinion. I recognize that the federal tax benefit rule does not involve the determination of the existence or nonexistence of an exemption or deduction inasmuch as a recovered loss is not treated as a deduction under the exclusionary aspect of the rule; it simply is not considered income. See 26 U.S.C. § 111 (1994). The majority begs the question, however, when it states that the existence of a Connecticut tax benefit rule does not involve the determination of the existence of an exemption or deduction. The majority assumes what it should demonstrate: that § 12-701 (a) (19) incorporates the methodologies of the federal income tax scheme, as distinct from the number derived from those methodologies.

Unlike the federal income tax scheme, Connecticut's income tax statutes do not make a distinction between nonincome items and deductions. Section 12-701 (a) defines adjusted gross income as "adjusted gross income . . . for federal income tax purposes"; General Statutes § 12-701 (a) (19); and then provides for eighteen specific modifications to that number for purposes of calculating Connecticut adjusted gross income. See General Statutes (Rev. to 1993) § 12-701 (a) (20), as amended by Public Acts 1993, No. 93-74, § 39,

nal quotation marks omitted.) *Bolt Technology Corp.*
v. *Commissioner of Revenue Services*, 213 Conn. 220,
227–28, 567 A.2d 371 (1989); see footnote 7 of the major-
ity opinion. I believe that the deduction for a taxpayer's
windfall recovery of a previous loss for Connecticut
income tax purposes, pursuant to the exclusionary
aspect of a Connecticut tax benefit rule, should be a
matter of legislative grace, not of judicial fiat. In my
view, the plaintiffs in this case have not established any
statutory basis for such a deduction.

The majority suggests, and I do not necessarily dis-
agree, that the tax benefit rule is a matter of "common
sense" and that it is " 'an equitable doctrine.' " The
majority also enumerates several policy justifications
for the rule.[6] See part III of the majority opinion. This
court previously has indicated, however, that "the fair-
ness of [Connecticut's] tax [statutes] is within the pre-
rogative of the legislature, and not of this court." *Yaeger*
v. *Dubno*, 188 Conn. 206, 213, 449 A.2d 144 (1982).
Whether the federal tax benefit rule may be a sensible

and Public Acts, Spec. Sess., May, 1994, No. 94-4, § 26. I believe that if the
taxpayer wishes to modify adjusted gross income for some purpose unre-
lated to federal tax purposes, and the modification results in a reduction
in taxable income for Connecticut income tax purposes, the taxpayer clearly
and unambiguously must establish the right to make that modification. *Bolt
Technology Corp.* v. *Commissioner of Revenue Services*, 213 Conn. 220,
227–28, 567 A.2d 371 (1989).

[6] I would point out, however, that there may be sound reasons why the
legislature would not want to adopt such a rule. First, because the dollar
amount of adjusted gross income reported on a taxpayer's federal income
tax return already reflects the operation of the federal tax benefit rule, the
state and the taxpayer will generally, although, as the facts of this case
suggest, not always, obtain the benefits of the rule, even without the opera-
tion of a separate Connecticut rule. Thus, the policy reasons supporting the
federal rule are not as compelling when advanced in support of a Connecticut
rule. Second, it appears that the use of a specific dollar amount from the
federal income tax form, as opposed to the incorporation of the entire
methodology for calculating that dollar amount, makes the determination
of adjusted gross income for Connecticut income tax purposes vastly simpler
for both the taxpayer and the state.

or equitable rule is irrelevant in determining whether the legislature intended to incorporate such a rule in Connecticut income tax statutes. There is no reason to believe that the legislature had any such intention. Additionally, I would note that there may be other unforeseen, adverse consequences to incorporating the entire body of federal income tax methodology into the phrase "adjusted gross income . . . as determined for federal income tax purposes." General Statutes § 12-701 (a) (19). Accordingly, I believe that that phrase simply means what it says: adjusted gross income as determined for purposes of calculating the taxpayer's federal income tax. In other words, it is the adjusted gross income reported on the taxpayer's federal income tax form.

My conclusion is supported by a comparison of Connecticut Form CT-1040 for the 1994 tax year, issued by the department of revenue services, with United States Individual Income Tax Return Form 1040 for the same tax year. The Connecticut form does not require the taxpayer to calculate federal adjusted gross income in accordance with the federal methodology. Rather, line 1 of the Connecticut form, which provides, "Federal Adjusted Gross Income (from Federal Form 1040, Line 31 or Form 1040A, Line 16, or Form 1040EZ, Line 3)," simply requires the taxpayer to report the line item amount calculated on the federal form. It fairly may be assumed that the legislature was aware of the form and content of the 1994 Connecticut Form CT-1040. The legislature has never suggested that that form was inconsistent with the intent of the tax legislation that it was designed to implement. When the legislature is aware of an agency's interpretation of a statute and is silent concerning that interpretation, this court "construe[s] the legislative silence as legislative concurrence in that interpretation. That legislative concurrence is presumptive evidence of the correctness of the adminis-

trative interpretation. . . . This presumptive evidence of correctness we add to the persuasive effect normally given to an administrative interpretation. Coupled, these two considerations outweigh any arguments that might be advanced for a contrary interpretation." (Citation omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Public Utilities Control Authority*, 176 Conn. 191, 199, 405 A.2d 638 (1978).

In summary, I do not believe that the legislature intended to incorporate a Connecticut tax benefit rule into the Connecticut income tax statutes. Accordingly, I dissent in part. To the extent that the majority upholds the trial court's disallowance of the plaintiffs' claimed deduction under the tax benefit rule, I concur in the result.