******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAIRYLAND INSURANCE COMPANY *v.* MAUREEN K.
MITCHELL, EXECUTRIX (ESTATE OF JOHN
MOONEY, JR.), ET AL.
(SC 19482)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued October 7, 2015—officially released January 19, 2016*

*William M. O'Donnell III*, with whom, on the brief, were *Lauren J. Taylor* and *S. Sherry Xia*, for the appellant (named defendant).

*Cristin E. Sheehan*, with whom was *Cara D. Joyce*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. This appeal presents the question of whether General Statutes (Rev. to 2009) § 38a-335 (d)[1] bars automobile liability insurers from excluding coverage for personal injuries caused to a named insured unless the exclusion is set forth in a separate endorsement to the policy. The named defendant, Maureen K. Mitchell, in her capacity as executrix of the estate of John Mooney, Jr. (decedent), appeals from the trial court's summary judgment rendered in favor of the plaintiff, Dairyland Insurance Company, in this declaratory judgment action brought to determine the scope of coverage provided by an automobile insurance policy and the associated duty to defend. She argues that the trial court's ruling was improper because the exclusion at issue was void and unenforceable due to its failure to comply with the clear and unambiguous requirements of § 38a-335 (d). We agree and reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the appeal. The decedent died in an automobile accident on April 24, 2010, while riding in his own motor vehicle as a passenger. The vehicle was being driven, with the decedent's permission, by the decedent's friend, Robert Atherton,[2] when it struck a parked tractor trailer. At the time, the vehicle was insured by the plaintiff under a personal automobile policy (policy). Atherton was a covered permissive driver under the policy.

On or about April 12, 2012, the defendant filed a wrongful death action against Atherton, seeking various damages on behalf of the decedent's estate. On June 25, 2012, the plaintiff filed a one count declaratory judgment action[3] against the defendant and Atherton, seeking a ruling that the policy did not provide coverage for the defendant's claims against Atherton and that the plaintiff had no duty to defend Atherton. Specifically, the plaintiff claimed that, although Atherton generally was covered as a driver, exclusion 11 of the policy precluded coverage for claims of bodily injury to the named insured, i.e., the decedent.[4]

Thereafter, the plaintiff filed a motion for summary judgment on the basis of that exclusion, arguing that it unambiguously barred coverage for the defendant's claims and, therefore, that the plaintiff had no duty to defend or indemnify Atherton. The defendant objected to the plaintiff's motion, arguing that exclusion 11 violated § 38a-335 (d) and, therefore, was void. Specifically, the defendant contended, § 38a-335 (d) required that an exclusion, such as exclusion 11, be set forth separately in an endorsement to the policy that specifically names the individual excluded from coverage. Exclusion 11, to the contrary, is located within the body of the policy. The defendant argued further that,

because exclusion 11 failed to comply with the statute, it was void and unenforceable as against public policy. Consequently, according to the defendant, the plaintiff had a duty to defend Atherton and, potentially, to indemnify him if he ultimately were to be held liable for the decedent's death. In response, the plaintiff contended, inter alia, that exclusion 11 was valid, consistent with Connecticut's public policy and specific enough to satisfy the parameters of § 38a-335 (d).

After surveying the various appellate and Superior Court case law applying § 38a-335 (d), the trial court concluded that exclusion 11 did not violate that statute and, further, unambiguously barred the defendant's claims against Atherton.[5] Accordingly, the court rendered summary judgment in favor of the plaintiff. The defendant's appeal followed.[6]

The defendant claims that the trial court improperly granted the plaintiff's motion for summary judgment because exclusion 11, although permitted by § 38a-335 (d), nevertheless is invalid because it fails to comply with the plain and unambiguous strictures of that statute, namely, the requirements that the exclusion be both sufficiently specific and set forth in a separate endorsement to the policy. According to the defendant, these requirements must be met in order to create a valid exception from coverage, because such an exception would not be expected by the ordinary consumer and, therefore, must be set forth in a manner that is more likely to be noticed.[7] The plaintiff contends, in response, that the exclusion's location in the body of the policy, rather than in an endorsement, "unquestionably" complies with § 38a-335 (d), and that the exclusion clearly and unambiguously disallowed liability coverage for the decedent. According to the plaintiff, it would be "illogical" to conclude that the exclusion, which specifically is authorized by § 38a-335 (d), is invalid simply because it was part of the original terms of the policy rather than set forth in an amendatory endorsement. We agree with the defendant that exclusion 11 is invalid because it was not set forth in a separate endorsement to the policy.[8]

We begin with the standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 37, 84 A.3d 1167 (2014).

The parties do not dispute that exclusion 11, by its terms, precludes recovery under the policy. See footnote 4 of this opinion. They contest only whether that exclusion, as it appears in the body of the policy, is authorized by § 38a-335 (d) and, therefore, is valid. Because the trial court's conclusion in this regard required it to determine the meaning and applicability of a statute, our review is plenary. *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, supra, 311 Conn. 37; see also *Joseph General Contracting, Inc.* v. *Couto*, 317 Conn. 565, 586, 119 A.3d 570 (2015) (statutory interpretation presents question of law). In reviewing the trial court's construction of § 38a-335 (d), we adhere to the strictures of General Statutes § 1-2z.[9]

Section 38a-335 governs the general requirements for automobile liability insurance policies in Connecticut. At the time of the accident when the insurance policy at issue was in effect, subsection (d) provided: "With respect to the insured motor vehicle, the coverage afforded under the bodily injury liability and property damage liability provisions in any [automobile liability insurance] policy shall apply to the named insured and relatives residing in his household unless any such person is specifically excluded by endorsement."[10] General Statutes (Rev. to 2009) § 38a-335 (d). This court had occasion to construe this subsection in *American States Ins. Co.* v. *Allstate Ins. Co.*, 282 Conn. 454, 922 A.2d 1043 (2007), a conflict of laws case in which an insurer sought to exclude liability coverage for injuries caused to a named insured under a policy provision similar to exclusion 11.[11] As part of a multifactor test used to determine whether Connecticut or Florida law should govern the dispute, we weighed the public policy interests of the conflicting forums. We concluded that § 38a-335 (d) did not create "an absolute prohibition on such exclusions, but merely require[d] *notice and acceptance by the insured of an endorsement* that specifically exclude[s] the [named insured and] relatives residing in the household of the named insured." (Emphasis added; internal quotation marks omitted.) Id., 475. Stated otherwise, the statute "prescribes a process by which such exclusions must be executed [in order] to be valid." Id.

In the insurance context, "endorsement" is a term of art. It is defined as "a writing *added or attached to a policy or certificate of insurance* which expands or restricts its benefits or excludes certain conditions from coverage. . . . When properly incorporated into the policy, the policy and the . . . endorsement together constitute the contract of insurance, and are to be read together to determine the contract actually intended by the parties." (Emphasis added; internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 806, 967 A.2d 1 (2009); see also id. (endorsement is "[a] written or printed form

*attached to the policy* which alters provisions of the contract" [emphasis added; internal quotation marks omitted]).

When an insurer seeks to limit its liability based on a statute, "it should only be permitted to do so to the extent that the statute expressly authorizes." *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 674, 591 A.2d 101 (1991). "In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Internal quotation marks omitted.) *Piersa* v. *Phoenix Ins. Co.*, 273 Conn. 519, 529, 871 A.2d 992 (2005); see also *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 156, 617 A.2d 454 (1992). This requirement pertains to matters of both substance and form. See 2 G. Couch, Insurance (3d Ed. 2010) § 22:33, p. 22-147 ("[e]xceptions are without effect and may be ignored where there is a violation of statute in respect of the size of type in which they are printed and the want of prominence given them in the format of the policy"); 43 Am. Jur. 2d 238, Insurance § 180 (2013) ("[i]f an insurance policy provision violates a statute requiring exceptions to be printed with prominence, an exception that is not printed in compliance with the statute will be rendered meaningless, and the contract will be read as if the exception were not there").

On the basis of the foregoing law, we conclude that the trial court improperly held that exclusion 11 was valid, as that exclusion was not set forth in an endorsement as clearly and unambiguously required by § 38a-335 (d), but rather, was listed among other exclusions in the body of the policy itself. We disagree with the plaintiff that the exclusion's clarity excuses it from the statutory requirement that it be set forth in an endorsement, or that it is "illogical" to enforce such a requirement. Presumably, the legislature considered exclusions such as exclusion 11 to be counterintuitive to the lay consumer of insurance and, therefore, required them to be set forth in a conspicuous fashion.

The plaintiff directs our attention to the distinction between liability coverage for the named insured when he or she is *a tortfeasor* who negligently injures third parties, and liability coverage for the named insured when he or she is *a victim* of the negligence of another insured party under the policy, such as Atherton. It argues, as an alternative ground for affirmance of the trial court's judgment, that § 38a-335 (d) is directed at the first situation, but not at the second. Consequently, according to the plaintiff, the statute is simply inapplicable and, therefore, no endorsement was necessary.

It is difficult to see how this argument benefits the plaintiff because it has not identified any other statutory or regulatory authority for disallowing coverage for certain classes of injured parties if § 38a-335 (d) is inappli-

cable.[12] In any event, we agree with the defendant that there is no basis for the distinction identified by the plaintiff in the wording of the statute, which, in the years since its enactment, has been applied by Connecticut's courts under both fact patterns. See, e.g., *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 458 (named insured as injured party); *Progressive Northwestern Ins. Co.* v. *Rivera*, Superior Court, judicial district of Hartford, Docket No. CV-00-0802973-S (September 25, 2001) (30 Conn. L. Rptr. 469) (relative of named insured as liable party); *Colonial Penn Ins. Co.* v. *Patriot General Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. CV-95-0377876-S (June 19, 1998) (22 Conn. L. Rptr. 355) (named insured as liable party). Subsequent to these decisions, the legislature has amended the statute; see footnote 10 of this opinion; but has not rewritten it in a fashion that would make clear an intent to limit its application to the named parties as tortfeasors only. "[T]he legislature is presumed to be aware of the [courts'] interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation," particularly when it "affirmatively amended the statute subsequent to [such] interpretation, but chose not to amend the specific provision of the statute at issue." (Internal quotation marks omitted.) *Berkley* v. *Gavin*, 253 Conn. 761, 776 n.11, 756 A.2d 248 (2000); see also *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 404, 999 A.2d 682 (2010).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

[1] Hereinafter, all references to § 38a-335 are to the 2009 revision, unless otherwise noted.

[2] Atherton also was named as a defendant in this action. He did not appear in the trial court proceedings, however, and he has not participated in this appeal. We refer, hereinafter, to Mitchell as the defendant and to Atherton by name.

[3] General Statutes § 52-29 (a) provides in relevant part that "[t]he Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration . . . ."

[4] The portion of the policy pertaining to liability coverage provides in relevant part: "*We* will pay damages for which any *insured person* is legally liable because of *bodily injury* . . . caused by a *car accident* arising out of the ownership, maintenance or use of a *car* . . . . *We* have no duty to defend any suit or settle any claim for *bodily injury* . . . not covered under this policy." (Emphasis in original.) The policy otherwise defines "[b]odily injury" to include death, and "[i]nsured person" to include both the named insured, here, the decedent, and permissive users such as Atherton.

The body of the policy also contains a number of exclusions within the liability coverage portion, among them exclusion 11. That exclusion provides in relevant part: "This coverage and our duty to defend does not apply to . . . [b]*odily injury to you.*" (Emphasis in original.) "You" is defined in the policy as the named insured, who in turn is identified as the decedent.

[5] The trial court's opinion specifically acknowledges the defendant's argument that exclusion 11, to be valid, needed to be both: (1) specific; and (2) set forth in an endorsement to the policy. The court's analysis, however, addresses only the specificity and clarity of that exclusion, and not the question of whether it properly was located within the policy itself.

[6] The defendant appealed from the trial court's judgment to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[7] The defendant also contends, in the alternative, that exclusion 11 is invalid and unenforceable because it is contrary to separate statutory provisions governing minimum coverage for bodily injury liability, or because it is unconscionable and violates Connecticut public policy. Because we agree with the defendant's first claim, we need not address these alternative bases for her appeal.

[8] Because the failure to set forth exclusion 11 in a separate endorsement is fatal to its validity, we do not address the defendant's additional contention that the exclusion is not sufficiently specific.

[9] "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, supra, 317 Conn. 586.

[10] In the following year, § 38a-335 (d) was amended by No. 11-19, § 4, of the 2011 Public Acts. That subsection presently provides: "With respect to the insured motor vehicle, the coverage afforded under the bodily injury liability and property damage liability provisions in any [automobile liability insurance] policy shall apply to the named insured and relatives residing *in such insured's* household unless any such *relative* is specifically excluded by endorsement." (Emphasis added.) General Statutes § 38a-335 (d). The change suggests that, at present, an automobile liability insurer may not exclude a named insured from bodily injury liability or property damage liability coverage under any circumstances. In this opinion, however, we analyze the validity of the exclusion at issue with reference to the statute as it existed in 2010, when the policy at issue was in effect.

[11] The exclusion at issue, which was set forth in an endorsement, barred "automobile liability insurance coverage for bodily injury to [the policyholder] or any resident of [the policyholder's] household related to [the policyholder] by blood, marriage or adoption." (Internal quotation marks omitted.) *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 282 Conn. 458. One of two policyholders sought to recover under the policy for injuries she had sustained as a passenger while the other policyholder was driving the insured vehicle. Id., 457.

[12] See Regs., Conn. State Agencies § 38a-334-5 (c) and (d) (listing permissible exclusions for automobile liability insurance policies, and requiring liability coverage for permissive users, with certain inapplicable exceptions, respectively).